# Irvine *against* Bull.

Common law actions may be used to compel the specific performance of an agreement for the purchase and sale of lands, by means of a conditional verdict, or by so regulating its amount as to make performance less grievous than payment.

In an action on a contract for the purchase and sale of land, when the plaintiff seeks to compel specific performance, evidence of the value of the land is pertinent to the issue.

A declaration containing in substance all the essentials of a good cause of action is sufficient after verdict; although bad, if objection had been made upon the trial.

ERROR to the common pleas of *Bradford* county.

David M. Bull against Andrew Irvine.   Action on the case ; the verdict and judgment were for 200 hundred dollars.

The facts of the case and the points ruled, are distinctly stated in the opinion of the court.

*Ellwell* and *Williston,* for plaintiff in error.   If a vendor without any fault or fraud is unable to make a good title, and offers to return the purchase money, the purchaser cannot recover for the imaginary loss of a good bargain.   2 *Bl. R.* 1078 ; 4 *Amer. Com. Law* 95 ; 2 *Wend.* 399 ; 6 *Wheat.* 106 ; 2 *Saund.* 169 ; 7 *Cowen* 687.

*Overton,* for defendant in error, on the same point, cited, 12 *Law Lib.* 89 ; *Ross on Vend.* 368 ; 2 *Cain. Ca. Er.* 216 ; 2 *East* 211 ; 2 *Taunt.* 207 ; 2 *Penns. Rep.* 219.

The opinion of the Court was delivered by

HUSTON, J.—The question in this cause arose on the following

statement of facts, which I will arrange according to the order of time, without, in all cases, regarding the order in which they came before the court.

About the close of 1828 Irvine and Bull agreed by parol for the sale and purchase of a vacant lot in the town of Towanda. The price was to be 50 dollars, to be paid in cash when a deed was made and delivered, but it did not appear that any day was precisely appointed. Soon after this, the father-in-law of Bull called on Irvine and informed him he had the money ready to pay, and wanted the deed. Irvine was sick, but said he would have a surveyor and mark out the lot and give the deed at the December court, when he would want the money. The same person at the appointed time called and offered the money. The deed was not made, but an assurance given that it would soon be ready. Early in the spring, Irvine called on the brother of Bull to see the lot surveyed and marked, and this was done. D. M. Bull, who did not live in Towanda, soon after this, had a fence put round the lot and leased it to a person who planted it with potatoes, beans, &c., and planted some fruit trees ; and Bull next winter agreed to lease it to the same tenant for another year. The next spring Irvine applied to that tenant and offered him another lot to cultivate, because he said he wished to give the possession of the lot in question to a person who had a promise of another lot from Irvine; he said his object was not to get Bull out of possession, whose right he admitted.

Some time after this Irvine and Mr Cash and Bull's brother being near the lot, Irvine said he had sold the lot too cheap and he would give D. M. Bull 20 dollars to recant, and Cash said he would give 20 dollars more. At one time Irvine went to the brother of Bull and asked where D. M. Bull lived, and was told at Munroe in that county. Irvine said he wanted the money in one hour. D. M. Bull at one time offered the money to Mr Cash who refused to receive it. It being reported that Cash and Kinney had an interest in the lot, the brother of Bull went to them and they both informed him that Irvine had power to make a good title.

In the spring of 1831 Bull again leased it to his former tenant, who ploughed and planted it, and as his corn was coming up Irvine went in and ploughed it up, and when the tenant came, drove him off with threats. Soon after this, Bull tendered and counted the money to Irvine, who ordered him away with abusive language.

The plaintiff called witnesses to prove the value of the lot from the time of the contract up to the time of the trial. This was objected to and admitted, and exception was taken to the opinion of the court.

The witnesses proved that improvements by the state or directed by act of assembly had, soon after this contract, raised the price of lots in this borough, so that probably this lot would have sold for 600 or 700 dollars.

After this, (and it does not in the paper book appear by which

[Irvine v. Bull.]

party, but as I understand it by the defendant) there was given in evidence a declaration of trust, dated the 27th of October 1830, by which Irvine declares he held the lot and other property in trust for Simon Kinney, David Cash and himself, each one-third.   The paper recites a conveyance from John M. Robinson to Irvine, dated the 13th of August 1826.

This declaration of trust was not recorded until the 16th of September 1833.

There was also shown a deed, dated the 12th of January 1836, by which Simon Kinney sold one-third of this lot to M. Mason for 150 dollars.

Also on the 31st of March 1837 a deed from David Cash to J. Barstow for one-third of this lot for 300 dollars.

There was also given in evidence a deed from Irvine to D. M. Bull for the lot in question, dated the 11th of October 1833.

This case had been commenced of February term 1832, and tried, as appeared by the record, in September 1833, and brought to this court and reversed, see 4 *Watts* 287.   At that trial the jury had given a verdict in favour of Bull for 300 dollars, to be released if Irvine executed a deed to Bull within thirty days and paid the costs.   On this account Irvine had made and offered the deed last mentioned. But on the 16th of September 1833 he had, or they had, recorded his declaration of trust for Kinney and Cash, and Bull refused to accept the deed offered.

To understand the ground on which the first bill of exceptions was decided, it is proper to state that, not having a court of chancery, our predecessors adopted modes of using and applying common law actions, unknown where there is a common law court, and also a court of chancery.   Thus, to compel a specific performance, an action on the case was brought, stating the agreement and such facts as would be sufficient to induce a chancellor to decree specific performance.   This was usually coupled with other counts, for damages for breach of the contract, and the jury might give damages for a sum so large, as that the vendor would make a deed, rather than pay such sum, and the verdict was conditional for so much, to be released on making a deed within a specified time and paying the costs.   This mode of proceeding is not always adopted, but we maintain an ejectment by the purchaser against the vendor, and on proving the contract and compliance with it, and if money has been tendered and refused, bringing it into court, the jury may find a verdict for the plaintiff, and he is put into possession, and the vendor takes the money tendered and generally makes a deed, or if he be obstinate, the record is the evidence of title in the person who recovered.   This last mode is the most usual and in many cases preferable, but not always so, and perhaps would not have been so in the case before us.

At the first trial the *narr.* did not contain a count setting out the contract, and possession delivered, and improvements made, and all

VII.—2 c*

[Irvine v. Bull.]

the circumstances which in chancery would have led to a decree for specific performance; and the conditional verdict and judgment on it were reversed by this court. When the cause went back, a count containing such particular designations was added; and as the cause progressed, and at the time testimony to prove the value was offered, the court and the plaintiff's counsel supposed, and had a right to suppose, the jury might consider it a case which would warrant them to find a verdict for such amount as would induce the vendor to comply with his contract rather than pay the amount of the verdict. This could only be done by ascertaining the present value of the lot and giving a conditional verdict for a sum at least equal to, or greater than that value. In a court of chancery, if Bull had made out a case which entitled him to a specific performance, the chancellor would have compelled Irvine to make a conveyance and deliver the lot, without regard to whether a canal by the state or any other matter had increased its value, or to how much its value was increased; and to make our mode of proceeding equivalent, we must adopt the same principle, viz., that the purchaser is entitled to the lot as it at present is, and give a verdict which will compel the vendor to convey it, or not leave him a gainer by refusing to comply with his contract.

In this point of view and in this stage of the cause there was no error in receiving the testimony.

After this evidence had been given, it was shown that Irvine was a trustee for two others, each equally interested with himself; and it seems to have been assumed by the court and counsel that as Kinney and Cash had each conveyed his one-third to other persons, it had become impossible for Irvine to convey to Bull the whole lot, and therefore a specific performance was impossible and to be laid out of view. It is not necessary to inquire whether, if this case was before a chancellor, and it appeared that the purchasers from Kinney and Cash bought after this suit brought and once tried, and with this and in addition actual notice of a previous contract to sell to Bull, there would or would not have been a decree compelling all of them to convey; nor whether, if Bull had brought an ejectment, he could have recovered the lot against all of them.

There was much argument here, and many authorities were cited, to prove what was the measure of damages where goods are contracted for and to be delivered at a future period; and though no express decision on the subject of a contract for the sale of lands was cited, or if the case in 2 *Bl. Rep.* 1078 is to be considered such, perhaps it is very distinguishable from this case, it purports to state the law in a case where the vendor, without any fault or fraud, is unable to convey, and we will not say whether the jury considered this exactly such a case.

Many of the cases on this subject are collected in the opinion of the supreme court of New York in 7 *Cowen* 687; and for myself, I am willing to agree to the whole of that opinion, including its limi-

[Irvine v. Bull.]

tations and exceptions.  There is no question before us on this part of the cause.  The court and counsel, as I said, assumed that the question on the count to compel a specific performance was removed from consideration; and on the counts for damages for breach of contract, the charge of the court was as favourable as they could wish, and rather more than they asked; and there is no error assigned to this charge.  Now, although the jury in their verdict went far beyond this charge, and gave 200 dollars damages, the only remedy was by motion for a new trial; we, on a writ of error, have no power to correct the finding of a jury as to the amount of damages.

But errors are assigned to the declaration; and in truth there is not one of the counts above exception.  The additional count, on which it was intended to ask a conditional verdict, states the tender to have been on a day subsequent to the commencement of this action; but it is laid under a *scilicet*, viz. "on the 1st day of April 1832, and at divers times before and after."  Now there was no exception to evidence on this ground; and it seems to be settled that although, if damages are claimed in the *narr.* for a time before or after the commencement of a suit, judgment will be arrested or reversed on error, yet it is also settled that if the time is laid under a *scilicet*, or is insensible or impossible, it will be cured by a verdict. 2 *Saund.* 169, 171, *note*; 2 *Chitt. Pl.* 307, 308.

And there is another good reason: this count, as appears by the points proposed to the court and by the charge, was laid out of view.

The verdict has also cured all exceptions to the other parts of the *narr.*  In 17 *Serg. & Rawle* 250, it is said, that a declaration containing in substance all the essentials of a cause of action is sufficient after verdict.  And when this cause was in this court before, and the *narr.* was objected to, the chief justice said, " the declaration contains, indeed, the substance of a legal cause of action," but was defective for the purposes of obtaining the equitable relief given; now if then, and at the last trial, the defendant was aware of some technical informalities and would not object at the trial nor demur, but took his chance before a jury, and this after being told that the *narr.* would be good after verdict, it could not reasonably be expected that we should now reverse.

Judgment affirmed.