# Findlay & Hay *versus* Keim.

1. J. agreed by articles to sell land to F.; J. refused to convey, and afterwards sold to K., who had knowledge of the former sale. F. sued J. in covenant, and afterwards brought ejectment against K. The suit in covenant was arbitrated; the award was for J.; F. appealed, and afterwards discontinued without leave of the court. In the ejectment, the court charged that the action of covenant was a disaffirmance of the agreement, and F. could not recover. *Held* to be error.

2. The defendant should have asked to stay proceedings or compel the plaintiff to elect under which action he would proceed, and to discontinue and pay the costs on the abandoned suit.

3. The pendency of the action of covenant could be used only in abatement, and it was too late, after going to trial on the merits, to use it in bar.

4. A prior *recovery* in covenant would have been in bar.

5. A plaintiff may discontinue a former action after plea in abatement, and reply that there is no such action pending.

6. The discontinuance after award without leave of the court would be a consideration for the court when a stay might be asked, but could not be taken advantage of otherwise by the defendant.

7. The court might allow plaintiff to strike out so much of declaration in covenant as was inconsistent with the proceeding in ejectment.

8. In Pennsylvania, in covenant, the plaintiff has a right to enforce specific performance by asking for a verdict for the value of the land, or such sum as would compel the execution of the covenant, to be released on compliance with the contract.

9. Potts's Appeal, 5 Barr 502, explained.

10. Chancery will generally compel a party seeking specific performance to elect between his action at law and in equity.

May 10th, 1869. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ. Absent, READ, J.

Error to the Court of Common Pleas of *Somerset county:* No. 3, to May Term 1869.

This was an ejectment, in which the writ was issued November 24th 1866, at the suit of Hiram Findlay and Michael Hay, against

[Findlay *v.* Keim.]

Joseph Keim, to enforce the performance of an agreement made between the plaintiffs and Jacob Keim, for the conveyance to them of 232 acres of land.

On the 17th of October 1864, Jacob Keim, by articles, agreed to convey to the plaintiff the land in dispute for $16,240; of which $3000 was to be paid on the 1st of April 1865, and $1000 annually, until all should be paid; the deed to be made on the payment of the $3000, and a mortgage given for the remainder of the purchase-money. Keim was to have the privilege of remaining on the premises till the 1st of April 1866; should he put in any winter grain, the plaintiff to have one-third in the shock. Shortly before April 1st, Jacob Keim declared to a witness that he would not make a deed to the plaintiffs, and that he had so notified them. The plaintiffs about that time tendered him the first payment, $3000, which he refused to receive. On the 30th of June, Jacob Keim sold the land to his son Joseph Keim, the defendant, who had knowledge of the sale to the plaintiffs: he entered into possession under the sale. On the 2d April, 1866, the plaintiff tendered to Jacob Keim $4180, and a bond and mortgage for the deferred payments. Jacob Keim refused to accept the tender or to deliver a deed, informing the plaintiff that he had sold the land. On the 20th of October 1866, the plaintiffs brought an action of covenant against Jacob Keim. They declared on the articles of agreement and assigned for breaches, that Keim had not made a title for the land, had failed to deliver possession, and had not delivered one-third of the grain; they laid the damages at $15,000.

Shortly after the action of covenant was brought, Joseph Keim made valuable improvements on the premises. On the 28th of September 1867 a rule of reference was entered by the defendant. On the 19th of October 1867 the plaintiffs gave notice, that at the hearing before the arbitrators they would confine their claim to the grain covenanted to be delivered, and that they did not claim anything by reason of the other breaches in the declaration. On the 9th of November the arbitrators awarded for the defendant, and on the 26th the plaintiffs appealed. On the 23d of March 1868 the plaintiffs, without leave of the court, discontinued the action of covenant.

The wife of Jacob Keim, shortly after the execution of the articles, declared that she would not sign the deed, and continued her refusal up to the trial and at it.

At the trial the plaintiffs made the following offer in writing, which was filed by leave of the court.

";The plaintiffs in this case now in open court notify Jacob Keim, the plaintiffs' vendor, and Joseph Keim, the defendant in this case, that they are ready and willing to receive, and hereby agree to take from Jacob Keim his deed for the premises mentioned in the agreement, without the signature of his wife. And

[Findlay *v.* Keim.]

they now deposit the sum of $6000, the amount heretofore tendered, which has been in court during the trial, together with the bond and mortgage tendered to Keim. The defendant to be permitted to take the money and lift the bond and mortgage by crediting thereon the amount paid on the same by the money tendered, upon his filing a deed from Jacob Keim to Findlay & Hay."

A number of points, not necessary to state, were submitted by each party.

The following part of the charge of the court (Rowe, J.) presents the question on which the case was ruled in the court below, and that only considered in the Supreme Court:—

"The plaintiffs then, on the 20th of October 1866, having offered to perform their part of the contract according to its terms, and Jacob Keim having refused to perform his part, were ready to ask of the courts a redress of their injury. They had three courses open to them, viz., a bill in equity to enforce the contract, an ejectment against the person in possession for the same purpose, or an action of covenant against Jacob Keim for damages. They chose covenant, and thereby declared in effect not only that they could be adequately compensated in damages, but that they preferred redress in that way to the getting of the land itself. But after they had elected to adopt this remedy, and while they were pressing for the redress it gave them, in a common-law form, while their action of covenant was still pending and undetermined, they brought this action of ejectment for the land itself. Thus, at the same time, they were demanding the land and damages, because they could not get the land. They were asking the courts to preserve the contract entire and operative, and to say, at the same time, that it was wholly and for ever broken and gone. This was blowing hot and cold with the same breath. The action of ejectment and the action of covenant, as here applied, are altogether inconsistent, and the plaintiffs were not entitled to both at the same time. It is certain that a plaintiff who has made his election by bringing an action shall not bring the first species of action for the same cause whilst the former is pending, or after it has been determined by a verdict. A plaintiff who has proceeded at law and recovered damages for breach of the contract, cannot afterwards sue for its specific performance; nor can a defendant, after an action at law has been commenced against him for the breach of his agreement, go into equity for a specific performance of it, unless under peculiar circumstances.

"The plaintiffs' ejectment,—their action of covenant for the same cause, pending when it was brought,—was still-born, and no subsequent measure that they could adopt would serve in the least to vivify it. Their notice, a year after, that they confined their claim in the action of covenant to the damages for the nondelivery of the grain was therefore futile. It is proper to notice

[Findlay v. Keim.]

also that the action of covenant, even as restricted by their notice, would not lie at the same time with their action of ejectment, because in the latter action all the equities in respect of the subject-matter of it will be fully adjusted, and it is the policy of the law to avoid circuity of action. Further, their total discontinuance of the action of covenant long after the institution of the ejectment suit, would not have enabled them to maintain the latter. But they did not discontinue it, because they could not, after award for the defendant and appeal by them, without leave of the court, which was not had." * *

"For the reasons now given, we think the plaintiffs cannot recover, and we direct you to find a verdict for the defendant."

The verdict was for the defendant.

The plaintiffs took a writ of error, and in a number of specifications assigned the instructions of the court for error.

*Baer & Baer*, for plaintiffs in error.—A party may sue for specific performance and for damages for breach of another part of the contract at the same time: Fenning v. Humphrey, 4 Beav. 1; Merchants' Ins. Co. v. Algeo, 7 Casey 446; 2 Sugden on Vendors 173. Election is to be exercised only where the actions are inconsistent, not where they are concurrent: Story's Eq. J., §§ 716, 717; 4 Bouv. Inst. 193, 444; Patterson v. Swan, 9 S. & R. 16. Ejectment for specific performance is governed by the same rules as a bill in equity; Henderson v. Hays, 2 Watts 148; Pennock v. Freeman, 1 Id. 401; Brawdy v. Brawdy, 7 Barr 157. The most that could be required of the plaintiffs was that they should elect as to their action: Story's Eq., §§ 738, 742, 751, 775, 776, 889; Mitford's Pleading 248, 250; Gibson v. Finley, 4 Md. 75; Toland v. Tichenor, 3 Rawle 320; 1 Butler's Reminiscences 39, 40; Witman v. Ely, 4 S. & R. 264; S. East Railway v. Knott, 17 Eng. L. & Eq. 555; Brush v. Vandenburg, 1 Edward's Chan. 26; Brightly's Eq. 188; Foss v. Haignes, 31 Me. 81. A party is not to be deprived of a right remedy because he has chosen a wrong one; Kelsey v. Murphy, 2 Casey 83. Judgments and matters of estoppel alone conclude parties; 1 Chitty's Pl. 214. There was no plea of *lis pendens*, but only the general issue: Green v. N. Buffalo, 6 P. F. Smith 110; Morris v. Robinson, 3 B. & C. 196; Wistar v. McManes, 4 P. F. Smith 326; Black v. Tricker, 2 Id. 436; Marston v. Lawrence, 1 Johns. 397.

*W. H. Koontz*, for defendant in error.—A plaintiff cannot claim by inconsistent remedies: 5 Barr 500; Share v. Anderson, 7 S. & R. 63; 1 Tidd's Pr. 10; Clark v. Seirer, 7 Watts 109; Erwin v. Myers, 10 Wright 106; Smith v. Hodson, 4 T. R. 211; 2 Sm. L. C. 210; Lawrence v. The Ocean Ins. Co., 11 Johns. 241; Coke Litt. 146, a; Burke's Estate, 1 Pars. Rep. 470; 1

[Findlay *v.* Keim.]

Chitty's Pl. 212; Patterson *v.* Swan, 9 S. & R. 20; Harker *v.* Whitaker, 4 Watts 476; Ong *v.* Campbell, 6 Id. 395; Beltzhoover *v.* Commonwealth, 1 Id. 126; Strickler *v.* Guildin, 6 Casey 114; Weaver's Road, 9 Wright 405. The action of covenant, after award, could not be discontinued without leave of the court: Act of June 16th 1836, § 25, Pamph. L. 721, Purd. 55, pl. 32; McKennan *v.* Henderson, 5 W. & S. 370; Girard Bank *v.* The Schuylkill Bank, 8 Id. 242. The election binds privies as well as parties; Merrick's Estate, 5 W. & S. 9; Diamond *v.* Lawrence County, 1 Wright 353; Hill *v.* Oliphant, 5 Id. 364. "Not Guilty" is the plea in ejectment fixed by statute: Act of April 13th 1807, § 4, 4 Sm. Laws 477, Purd. 366, pl. 15. Under it the death of plaintiff at the commencement of the suit may be shown: Patterson *v.* Brindle, 9 Watts 98.

The opinion of the court was delivered, July 6th 1869, by

AGNEW, J.—There is but one question in this case. Jacob Keim sold his farm to the plaintiffs and then refused to comply with his contract. The plaintiffs tendered the money due and a mortgage for the remainder, and brought an action of covenant on the articles. The action was arbitrated, and for some reason not apparent, an award was given against the plaintiffs, who appealed. They then brought this ejectment to enforce specific performance of the contract. After the institution of the ejectment the plaintiffs discontinued the action of covenant without leave of the court. On the trial of the ejectment, without a previous motion to stay proceedings or compel an election, the court held that the actions of covenant and ejectment were inconsistent remedies, that by bringing covenant the plaintiffs had made their election and were barred from a recovery in the ejectment. This was an error. The action of covenant is founded on the agreement and is in affirmance of it. In the action of covenant, under our Pennsylvania practice, originating in the want of a court of chancery, the plaintiffs had a right to proceed to enforce specific performance, by asking for a verdict for the value of the land or such other sum as would compel execution of the covenant of the vendor, to be released on the tender and filing of a sufficient deed, according to the terms of the contract. Or if he chose he might ask damages only for the non-performance. This is the settled practice in this state, and this mode of equitable proceeding extends not only to covenant, but to debt, assumpsit and ejectment: Decamp *v.* Feay, 5 S. & R. 323; Irvine *v.* Bull, 7 Watts 323; Coolbaugh *v.* Peirce, 8 S. & R. 418; Huber *v.* Burke, 11 S. & R. 244, 245; Moyer *v.* Germantown R. R. Co., 3 W. & S. 92; Smethurst *v.* Woolston, 5 W. & S. 106; Haverstick *v.* Erie Gas Co., 5 Casey 254. The error of the learned judge was in supposing that ejectment is the only common-law

[Findlay v. Keim.]

action which can be used to enforce specific performance. The declaration in the action of covenant sets forth the agreement, alleges breaches of it, the chief of which is the failure to convey according to the covenant in the article, and lays the damage at $15,000, a sum amply sufficient, and indicative of the intent, to compel specific performance. It is clear the action of covenant was not in disaffirmance of the contract, and it is on that ground only it could be held to be absolutely inconsistent with specific performance. Potts' Appeal, 5 Barr 502, relied on in the court below, is different from this case. There the vendee was dead, leaving personal estate wholly insufficient to pay his debts and even a small portion of the purchase-money. The vendor having brought his ejectment on his legal title, then went into the Orphans' Court and demanded a dividend of the personalty. The effect would have been that his claim would have stripped the other creditors of their proper share, his purchase-money being $6455 and the personal fund only $640, they having no other security for their debts, while he, after receiving his dividend, would have resorted to the land on his title and forfeited the contract, the personal estate being exhausted already. He was therefore claiming in inconsistent rights; the personalty on his contract, and the land by rescission.

The original practice in chancery is evidence that the action on the contract is not antagonistical to the bill for specific performance; the party being first sent into a court of law to establish his right to recover on his contract. This is now changed: 2 Story's Equity, § 738. Now in modern practice chancery will generally compel a party seeking specific performance to elect between his action at law and his suit in equity: 2 Daniel's Chancery Practice, § 4, cases of election. It is here the learned judge erred: he mistook a rule of legal discretion for a hard rule of law. There being no plea in abatement in ejectment, the plea of not guilty being the only plea under the statute, it was the duty of the defendant to have applied to the court to stay proceedings or compel the plaintiffs to elect under which action they would proceed, and to discontinue, if necessary, and pay the costs of the one they abandoned. But the pendency of the action of covenant could be used only in abatement, and it was too late after going into a trial on the merits, for the defendant to use it in bar of the plaintiff's right to recover. Had there been a final recovery in the action of covenant, the case would have been different, it then being a bar to a future action. "The circumstance of a party having elected one of several remedies by action will not in general preclude him from abandoning such suit, and after having duly discontinued it, he may adopt any other remedy :" 1 Chitty's Pl. 214; 2 Troubat & Haly's Practice, by Fish, p. 87, § 3. And he may discontinue after a plea in

[Findlay *v.* Keim.]

abatement, and reply that there is no such suit pending. This was expressly decided after full argument in Toland *v.* Tichenor, 3 Rawle 322. The fact that the Arbitration Law denies a nonsuit, unless by leave of court, after an award against the plaintiff, does not change the case. That would be a material consideration for the court in exercising their discretion on a motion to stay proceedings and to compel the plaintiffs to elect their action. It does not appear that Jacob Keim had any set-off, or defence which might have suffered by a nonsuit in the action of covenant. Besides, it was in the power of the court, on the motion to compel an election, to permit the plaintiff to strike out of the declaration all the breaches of the article inconsistent with the proceeding in the ejectment to compel specific performance, and to retain only the breach for the non-payment of the grain rent, for which the action of covenant could be rightly used. We think the court erred, therefore, in holding that the bringing of an action of covenant is an absolute bar to specific performance, and such an election of remedies as precludes the plaintiffs ever after from maintaining ejectment to compel performance.

Judgment reversed, and a *venire facias de novo* awarded.