## Walsh v. New Tioga Leader Building and Loan Association.

*Abraham L. Friedman,* for plaintiff; *Harry E. Apeler,* for defendant.

ALESSANDRONI, J., February 15, 1932.—A bill in equity was filed, in which the plaintiff avers that he is the owner of certain shares of stock in the Tioga Leader Building and Loan Association, on which he had paid in as dues the sum of $1080; that on or about December 9, 1930, the said association was merged with the Modern Tioga Building and Loan Association, under the name and style of New Tioga Leader Building and Loan Association, by virtue of which the defendant succeeded to all the assets and liabilities of the old Tioga Leader Building and Loan Association; that plaintiff did not consent to said merger, was unwilling that it be effected, and demanded payment of the value of his stock, which the defendant has failed to pay to him; that he is advised by defendant that the value of his stock at the date of the merger was 70 per cent. of the amount of dues paid in by him, but he believes,

expects to be able to prove, and, therefore, avers that the value of his stock is in excess of that amount.

The prayers of the bill are that defendant answer each averment of the bill; that the merger and consolidation of the two associations and all proceedings thereunder be declared illegal and void; that the Modern Tioga and the New Tioga Leader Building and Loan Associations be ordered to return to the Tioga Leader Building and Loan Association all property transferred; that the New Tioga Leader Building and Loan Association be decreed to pay plaintiff the full value of his stock on the date of merger, to wit, December 9, 1930; and for general relief.

An answer was filed by the defendant association, stating that the plaintiff had paid in as dues the sum of $1054, and that on December 6, 1930, the directors entered into an agreement to merge and consolidate the Tioga Leader Building and Loan Association, the agreement previously having been ratified by the stockholders of the Tioga Leader Building and Loan Association. It is further averred that prior to the merger the Tioga Leader Building and Loan Association was hopelessly insolvent, and on July 14, 1930, had been so declared by the Secretary of Banking, who ordered the association to show cause why possession should not be taken of its property; that pursuant to this notice the directors held meetings and decided to liquidate the association under the supervision of the Department of Banking; that numerous stockholders complained of liquidation, as the value of the stock would be very small in liquidation, and the Department of Banking ordered the association to appoint a stockholders' advisory committee to study the situation; that said committee was appointed, of which the plaintiff was a member, and in pursuance thereof the Tioga Leader Building and Loan Association decided to merge under the supervision and assistance of the Department of Banking, and as a result the Department of Banking formed a dummy corporation for the purpose of merging with the Tioga Leader Building and Loan Association, said association being known as the Modern Tioga Building and Loan Association. The merger was effected under the supervision and control of the Department of Banking, and the value of the stock of the Tioga Leader Building and Loan Association was scaled down to between 65 and 70 per cent. of the paid-in value. The merger also provided that there should be no withdrawals for a period of two years. It is averred that the association could only remain solvent upon condition that stockholders did not receive their money for two years, receiving, meantime, full-paid stock certificates payable two years after the date of the merger. It is averred that the real value of the stock at the time of the merger was far less than 65 to 70 per cent. of the paid-in value, but its actual value was so conjectural and speculative as to be impossible of definite ascertainment. It is further averred that on July 15, 1930, the plaintiff started suit in the Municipal Court against the Tioga Leader Building and Loan Association, as of July Term, 1930, No. 469, for the withdrawal value of his stock; that the value of the plaintiff's stock at the time of the merger was $713.09, conditioned, however, on the stockholder waiting a period of two years for receipt of said money, as otherwise the value of his stock would be far less than that amount. The plaintiff has now filed a rule for a decree for the amount admitted to be due, averring that he is entitled to judgment in the amount of $713.09.

The answer contains two defenses to the plaintiff's action: First, the prior pending suit at law for the withdrawal value of the stock; and, secondly, the averment of hopeless insolvency, resulting in a reorganization and merger of the association under certain terms and conditions. At common law, the

pendency of a prior suit could have been pleaded in abatement. Under our Equity Rules (15, 52 and 91), such matter must be pleaded in the answer. The defendant has so done. The pendency of a prior suit, if pleaded, constitutes a bar to a subsequent action: Findlay & Hay v. Keim, 62 Pa. 112. However, even after the plea the prior action may be discontinued: Findlay & Hay v. Keim, supra. See, also, Penn Bank v. Hopkins, 111 Pa. 328. The rule is well stated in Freeman v. Lafferty, 207 Pa. 32, 37, as follows: "While we are clear that on the authorities the plaintiff can abandon a proceeding at law before final judgment, go to the equity side of the court and file his bill, that is, he will not be barred in equity by the mere fact of having instituted proceedings at law, yet it is such a vicious practice to take up both sides of the court at the same time with the same case, that we have no hesitation in holding, he must abandon one proceeding before he can prosecute the other. This is the substance of the decisions in Findlay & Hay v. Keim, 62 Pa. 112, and Penna. Co. v. Phila. Nat. Bank, 14 Pa. C. C. Rep. 193. Here appellant did not discontinue the proceeding on his rule to show cause; he has been heard on the law side of the court and the court holds the decision under advisement. We think the pendency of that case in that condition was good cause for demurrer." The comparatively recent case of Meenen v. Negley, 93 Pa. Superior Ct. 591, affirms the stand of the court in the case of Findlay & Hay v. Keim, supra. The plaintiff, therefore, before proceeding with this action in equity should discontinue the action heretofore instituted: Freeman v. Lafferty, supra.

The question raised as to the right of a non-assenting stockholder of a building and loan association, which is insolvent and which has been reorganized under the supervision of the Department of Banking, to demand the value of his stock at the date of the merger presents a more difficult problem. In the recent cases of Stone v. Schiller Building and Loan Ass'n, 302 Pa. 544, and Brown v. Victor B. & L. Ass'n, 302 Pa. 254, our Supreme Court draws a distinction between the rights of stockholders of a building and loan association and stockholders of ordinary corporations. In Stone v. Schiller Building and Loan Association, the appellate court decided that the right of a stockholder to judgment against his association depended on its solvency. Insolvency has been interpreted, in the case of building and loan associations, as a condition wherein the association, after paying its general creditors, cannot pay its stockholders the amount of their contributions dollar for dollar. Insolvency is clearly averred in the answer filed to the bill. As stated in the above cited case: "Where an association is insolvent, as that term is generally understood, or where a succession of withdrawals would precipitate insolvency, or have a strong tendency to do so, a judgment should not be entered in an action by a withdrawing member. A judgment under such circumstances would not be effective. See Christian's App., supra [102 Pa. 184]; National Savings and Loan Ass'n, 9 W. N. C. 79. If a shareholder wishes to force further liquidation, it should be through the proper authorities. Where an investment in a building and loan association turns out to be doubtful, and the directors, by careful and prudent management, can save the venture, or greatly minimize the loss, these officers should be given every opportunity to bring the matter to a successful conclusion. This is a fundamental idea of partnership. The difficulty with associations is not always brought on by mismanagement; more frequently it is a depressed real estate market, particularly in times of great economic depression, such as the present. A shareholder owes a duty to his fellow members of the so-called partnership to not place them, as well as himself, in a position where unnecessary loss must be

suffered. He should not embarrass the association by suit and judgment. Such actions accentuate an already distressed real estate market, imperil loans, bring on execution sales, forced liquidation, or a state of insolvency: O'Rourke v. West Penn L. & B. Ass'n, *supra* [93 Pa. 308], 310, 311. To avoid such a disaster, when payment to withdrawing members becomes impossible, a reasonable time should be given to enable the officers to reëstablish the company. If this step is unavailing, the state banking department should be called in. They may be relied on to keep the affairs of the concern on an even keel and prevent overreaching, if any is attempted."

The policy of the court is clearly indicated as that of the large body of stockholders. The character of the association is clearly expressed. The status of stockholders of an insolvent association is stated to be not that of shareholders in a corporation but that of partners in a business venture. The court further stated: "A withdrawing stockholder is not obliged to share losses after a notice of withdrawal has been given to a solvent corporation; it is otherwise if the association is insolvent when notice is given. When the notice of withdrawal was given in this case the association was in process of liquidation." The defendant has clearly alleged the insolvency of the corporation and that the reorganized corporation will be insolvent if non-assenting shareholders insist on obtaining the appraised value of the stock at the time of the merger. The forced liquidation that will be entailed by compelling the association to pay claims of non-assenting stockholders will render the reorganization of no avail, and will precipitate the wholesale liquidation which the reorganization was designed to prevent. Those in charge of the association should be given an opportunity, by careful and prudent management, to minimize the losses that will be suffered. The plaintiff cannot be permitted in equity to obtain a preference over the overwhelming majority of members associated with him in the enterprise, and by demanding the value of his stock, lessen the value of that of his associates and render the value of that remaining for them much less. Such action is contrary to the fundamental principles of equity and of partnership law.

The law of ordinary corporations, which the plaintiff seeks to invoke, cannot apply to building and loan associations. Our Supreme Court has recently so ruled: Stone v. Schiller Building and Loan Association, *supra*. The difference between an ordinary corporation and a building and loan association is adequately illustrated by the fact that the former is solvent when it can pay its shareholders part of their original capital contribution, whereas, under similar circumstances, the latter will be deemed to be insolvent. The same rules, therefore, cannot apply to both.

The averments of the answer force the vexing question of the right of a non-assenting stockholder into the open. We have, in our opinion dismissing preliminary objections to plaintiff's bill, sustained his right to proceed, distinguishing therein the rights of a non-assenting from those of a withdrawing stockholder. We were concerned then only with the matters disclosed by the record. The plea of insolvency, however, introduces an element that acts as a bar to the entry of a decree for the amount admitted to be due when the corporation is a building and loan association. It is only when such an association is solvent that the rulings in Lauman v. Lebanon Valley R. R. Co., 30 Pa. 42, Barnett v. Philadelphia Market Co., 218 Pa. 649, and similar cases, apply. The moment the building and loan association becomes insolvent its stockholders must be treated as partners within the meaning of the Stone v. Schiller Building & Loan Ass'n, 302 Pa. 544, and Brown v. Victor Building & Loan Ass'n, 302 Pa. 254, decisions.

Plaintiff's argument distinguishing the non-assenting from the withdrawing stockholder, as applied to ordinary corporations or solvent building and loan associations, is judicially sound. If it ruled the fortunes of insolvent building and loan associations, its effects would spell disaster to an already distracted army of stockholders. Even without the timely relief afforded by the rulings in the oft-quoted Supreme Court cases, it would be indefensible to permit the withdrawing, dissenting or non-assenting stockholder (and he is the same by whatever name he may be called in the case of an insolvent association) to destroy the edifice that he enjoyed in prosperous days only because he is better able now to withstand the loss than his less fortunate partners. To avoid this injustice, the Act of June 14, 1923, P. L. 778, was passed.

The legislature of this state recognized this distinction by the Act of June 14, 1923, P. L. 778. It is there provided that whenever the Commissioner of Banking shall take over the affairs of a building and loan association to liquidate it or conserve its assets, he shall have power to return the affairs of the association to the stockholders under a plan of reorganization approved by him and by 70 per cent. of the stockholders thereof. Section two provides that: "In case any stockholder shall refuse to consent to such plan of reorganization, or to continue longer as a stockholder, the value of the interest of such stockholder in the assets of the association shall be determined and fixed by the commissioner, and sufficient assets of the association to protect the interest of any such stockholder shall be invested under the supervision of the Commissioner of Banking, and shall be so kept invested for a period of two years. After said two-year period, the value of the interest of each such stockholder, including the value of the interest in the assets of the association of persons refusing to continue as stockholders under the plan of reorganization, shall again be fixed and determined with the consent of the Commissioner of Banking, and when so fixed and determined, the amount to which each such person not continuing as a stockholder is entitled shall be forthwith paid them by the association, and the association shall be relieved from further liability to such persons." This is the action which was followed in the case of the Tioga Leader Building and Loan Association. The Secretary of Banking had notified the association that he was going to liquidate it to conserve its assets, and in the exercise of the power conferred on him by the act, the association was reorganized by effecting a merger with a dummy corporation. The rights of non-assenting stockholders are clearly set forth in the act as quoted above. The plaintiff merely has the right to have the value of his interest determined and after a two-year period to have the value of his interest in the assets of the association at that time fixed and paid to him. There is no present right in the stockholder to the value of the stock. At the end of the statutory period his right to judgment will be clear. This was provided in the agreement of merger, and, in fact, the defendant in its answer tenders a full-paid certificate for the value of the stock as determined at the time of the merger.

While our appellate courts have not interpreted the provisions of this act, we find dicta of the Superior Court in Allman v. Berg Building & Loan Ass'n, 100 Pa. Superior Ct. 205, 208, to the effect that a stockholder who dissents from the merger of his association with another is entitled to have the value of his stock ascertained and an order entered for its payment in accordance with the Act of June 14, 1923, P. L. 778.

And now, to wit, February 15, 1932, the rule for decree for the amount admitted to be due on bill and answer is discharged.