(15 App. Div. 69.)

PEOPLE v. EMPIRE LOAN & INVESTMENT CO.

(Supreme Court, Appellate Division, Second Department. March 16, 1897.)

BUILDING AND LOAN ASSOCIATIONS—CHARGING OFF LOSSES.

The directors cannot charge off a deficit against the stock of the members, so as to render the association solvent, where such deficit was created by expenditures made in violation of the articles of association.

Appeal from special term.

Action by the people of the state of New York against the Empire Loan & Investment Company to dissolve the defendant corporation. From an order entered October 24, 1896, appointing a temporary receiver of defendant, it appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Philip Carpenter, for appellant.
Theodore E. Hancock, Atty. Gen., for respondent.

GOODRICH, P. J. The complaint alleges, though somewhat in-artificially, that the defendant, a building and loan association, is insolvent; also that it has violated various provisions of its own charter and by-laws, and the laws of the°state, by conducting its business in an unsafe manner; that it is inexpedient and unsafe for it to continue its business, and that the interests of its creditors and shareholders and the public require its dissolution. It is to be observed that this appeal does not arise upon a motion to correct pleadings. If these are not properly drawn, their insufficiency as pleadings can receive judicial construction either by motion or demurrer, or at the trial; but in considering whether a receiver should be appointed the question is simply whether the complaint and moving papers present sufficient facts to justify the interposition of the court in temporarily

taking the assets of the company into its custody, and to prevent continuation or repetition of the alleged unlawful acts of the directors, and affairs which have resulted in dissipating the property of the association. Included in the moving papers is an affidavit of Mr. Hall, one of the examiners of the banking department, who states that the defendant began business in 1894, and that its first report of its business, filed in the department, showed that it had expended for operating expenses 36 per cent. of its gross receipts from all sources, counting as an operating expense the interest on the mortgages which it had assumed or money which it had borrowed. It is also stated in this affidavit that the last annual report, filed in 1896, showed that the defendant had expended about 41 per cent. of its gross receipts, and that the examiner reported that during the eight months previous to his examination of September, 1896, it was not doing any new business, but that its expenses of operation had been over $13,000 in excess of the sum which its by-laws authorized. The insolvency is also predicated upon the report of Mr. Eustace, dated September 29, 1896, and filed with the banking department, of which Mr. Eustace was an examiner. This report is, by statute, made a public record. Section 24 of the banking law (Laws 1892, c. 689). It shows that the assets amount to $122,892.74, while the liabilities are $144,599.76, leaving a deficiency of $21,707.02. By the articles of association the expenses of the corporation and the compensation of all officers and employés are to be paid only from the earnings, and are not to exceed the premium or membership fees collected, and are· not to be in excess of one-tenth of 1 per cent. a month per share of the par value of all stock in force; and, while the amount which could be legally used for expenses was $8,341.10, the expenses were actually $21,511.79, leaving the fund overdrawn $13,170.69. The officers' salaries alone amounted to $10,528.99, which exceeded the authorized amount of expense by more than $2,000. The defendant, however, claims that three items of the liabilities, amounting to $33,875, are for sums due the members of the corporation; and that of this liability $5,350, which was stock belonging to former officers, had been canceled, leaving what is termed "stock in force" amounting only to· $28,525, and that this latter amount was scaled down by a resolution. passed at a meeting of the members, held October 10, 1896, at which over 90 per cent of the stock was represented, and that the reported· deficiency of $21,707.02 with an addition of $240 was charged off the· books pro rata against the shares of the members and so canceled. It is also claimed that this action was within the power conferred by the articles of association, and that the result leaves the corporation solvent.

The appellant's counsel insists that the case of People v. Bankers' Loan & Investment Co., 13 Misc. Rep. 221, 34 N. Y. Supp. 235, decided by the general term of the common pleas, is authority for this· action of the directors in charging off the deficit, but in that case it does not appear that the losses which were charged off were deficits· arising from the illegal action of the officers or directors in the payment of salaries to themselves and other expenses, in violation of the articles of association, as is the fact in the present case. In fact, an·

examination of the papers in the case mentioned discloses the fact that the losses were on property of the corporation outside of the state. Losses may result from bad debts and the decision in question seems to relate to that class of cases, but we are referred to no authority and find it difficult to discover any principle which would enable the directors, by charging off pro rata the amounts illegally appropriated or expended by them, to destroy their own liability to an action for the recovery of such unlawful payments. Indeed, it is claimed by the attorney general that the facts alleged in the moving papers subject the offenders to a criminal prosecution within the provisions of the banking laws. Other articles of the association provide for the issuance of certificates of stock, of various descriptions, to members, and the payment thereon of dues by such members until the payments, together with profits from the business, shall equal $100, the par value of the shares; and that holders of certain classes of shares may, after given periods, withdraw shares by notice to the secretary, and thereby become entitled to receive the amount of dues paid, with 6 per cent. interest, or other amounts for different classes of shares. This would seem to afford a method of constituting the shareholders quasi creditors of the corporation, if they elected to become such.

Two questions arise: First, is the defendant insolvent? And, second, has it violated its charter, and failed to accomplish the object of its existence? That the corporation was insolvent on September 29th, when the examiner made his report, is prima facie established thereby. The company was not rehabilitated with solvency by the subsequent action of the members' meeting of October 10th, so far as the nonassenting members are concerned, all of whom may have certain rights of action against the executive officers to compel the repayment of salaries and expenses which were received or incurred by them in violation of the articles of association above referred to. Mere insolvency, nicely calculated to a fraction, and based upon the theory that all of the remaining assets are absolutely good, cannot impair the rights of the nonassenting members. "The insolvency of such an institution is sui generis. There can be, strictly speaking, no insolvency, for the only creditors are the stockholders by virtue of their stock. The so-called insolvency is such a condition of affairs of the association as reduces the available and collectable funds below the level of the amount of stock already paid in. The association is said to be insolvent when it cannot pay back to its stockholders the amount of their actual contributions, dollar for dollar." Towle v. Investment Soc., 61 Fed. 446. We are, therefore, forced to the conclusion that the corporation is in fact insolvent.

The other question—as to the violation of the charter and the failure of the defendant to fulfill the object of its existence—seems to depend upon several propositions. One of the articles of association reads as follows:

"The objects of the company shall be to accumulate a fund for the purchase of real estate, to erect buildings, or to make other improvements on land, and to pay off incumbrances thereon; to aid its members to acquire real estate, to make inprovements thereon, and to remove incumbrances therefrom; and for

the further purpose of accumulating a fund to be returned to its members who do not obtain advances, when the funds of the company shall amount to one hundred dollars per share."

If the corporation is insolvent, its object is certainly defeated, and its usefulness to its members is impaired, if not totally destroyed. The report shows not only that it has failed to accumulate a fund, but that its officers have dissipated the premiums received from its members, in violation of the articles of association. Besides, so far as appears from the papers, the officers have clearly violated the article which forbids the payment of salaries and expenses except from earnings, and then only within a certain and definite limitation. If there is any liability on the part of the officers to repay the sums illegally expended or appropriated by them for their own salaries, the receiver can enforce the repayment of these sums with greater certainty and effect that even the new officers would be apt to do in authorizing and prosecuting an action in behalf of the corporation against their predecessors, all the more that the allegations of the complaint in such an action must necessarily contain charges of vio- lation by such officers of their fiduciary duties. We consider, there- fore, that the best interests of the members of the corporation will be conserved by affirming the order appointing the temporary re- ceiver.

Order affirmed, with costs. All concur, except BARTLETT, J., not voting.