[Lennig's Appeal.]

A judgment on a mortgage is a conclusive adjudication of the amount due from the mortgagor to the mortgagee, at the time of its rendition: Carlisle *v.* Bindley, 10 Norris 229. A subsequent mortgage or other lien creditor is bound by it till he shows fraud against himself. By reason of the change in the law respecting usury, Greene *v.* Tyler & Co. is not applicable to the case in hand; and we but follow the decisions directly in point in ruling that the admitted facts do not entitle the building association to the money.

Decree reversed, and now it is considered and decreed that the money in dispute, $280, be appropriated to the judgment of Lennig et al. The appellees to pay the costs of this appeal and costs below which accrued subsequent to July 7th 1879.

# O'Rourke *versus* West Penn Loan and Building Association.

1. Building associations are not exceptions to the general law governing corporations, that a shareholder cannot sue at law *qua* shareholder. If he wishes to participate in all the profits of the association he must wait until the corporation winds up the series to which he belongs. If he is not content to await their action, his only remedy is to withdraw and bring a suit at law as a withdrawing stockholder.

2. *It seems*, there may be cases where said stockholder may invoke the aid of a court of equity.

February 27th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Error to the Court of Common Pleas, No. 3, of *Philadelphia county*: Of January Term 1880, No. 163.

Assumpsit by Patrick O'Rourke against the West Penn Loan and Building Association. The defendant pleaded non-assumpsit payment, set off, with leave, &c., and specially "that it is not true that on the 25th of February 1878, the books and accounts of said corporation would show that the assets thereof were sufficient to divide the sum of $200 to each and every member of the association for each and every share of the first series of the stock of said association held, and which had not been borrowed upon, pledged or transferred; but on the contrary, the said books and accounts plainly show that the assets of the association consist of bonds and mortgages in series subsequent to the first that are payable only in monthly instalments, and that when sufficient of these instalments should be paid in then only would the assets be sufficient to divide $200 among the said shares of stock in the first

series : and that, up to this time, sufficient money has not been paid to divide the said sum of $200 among the first series stockholders."

Patrick O'Rourke was the owner and holder of ten shares of the first series of stock issued by the defendant, and paid up all the dues upon said stock until, in February 1878, the said series matured or "ran out." At the public monthly meeting of said society, held at that time, it was announced by the officers of the said society that the stock of the said first series had "run out," and that payments of dues thereon should thenceforth cease. Subsequently, in November 1878, upon a report being made by the auditors of said association, said defendants printed and issued The Tenth Annual Report of the association, for the year ending October 1878, said report also showing that the said series had run out. The plaintiff demanded payment of the money due him by said association, and afterwards brought an action of assumpsit to recover the sum of $200, with interest, on each of the ten shares held by him. At the trial the plaintiff proved the above facts, when defendant moved for a nonsuit on the ground that the plaintiff was a stockholder in the defendant society, and that being such he could not sue defendant on said stock. The court granted the nonsuit, and subsequently refused to take it off, Yerkes, J., in an opinion saying :

" The plaintiff brought his action at law. Upon the trial he showed that he was the owner of the stock in the building association; that by the report of auditors, distributed at an annual meeting, in November 1878, each share of stock in the series to which he belonged was worth $200, and that thereafter the officer whose duty it was to receive monthly dues refused to receive them, on the ground that the stock was fully paid up. He was nonsuited, upon the ground that the rights which he sought to enforce being those of a stockholder only, he had no remedy at law.

" The general principle that a stockholder *qua* stockholder must resort to a court of equity is conceded by the plaintiff's counsel, but he contends that a stockholder in a building association, as soon as his stock is announced to be fully paid, becomes a creditor and ceases to be a stockholder, or that the announcement that the stock is fully paid is equivalent to a declaration of a dividend of the par value of the shares. His proposition, as found in the paper-book, is, ' The stock in question increased in value, and continued to be merely stock until the series ran out, after which time it stood in the position of a declared dividend.'

" It is true that it is the design and practice of associations to wind up as soon as can coveniently be done, after the stock becomes of the value of $200 a share. Stock and loans are cancelled, and cash is paid to the non-borrowers. There is nothing in this to change the status of stockholders. The corporation certainly exists until the final act of dissolution, and to exist there must be

stock and stockholders. The argument of · the plaintiff would leave no corporation to be sued, and no authority to divide the funds, and the assets would be in the hands of mere individuals. It is no answer to this to say that these associations generally issue several series of stock, and that because of outstanding series the corporation would exist to wind up a series that was fully paid, although stock of that series had ceased to be stock, and its holders had become creditors instead of stockholders, for the association may issue but one series, and these corporations are of limited duration ; the time must come with all of them when there will be but one series of stock outstanding. Nor can it be said that the stock of a fully-paid series retains enough of the elements of stock, and its holders sufficiently those of stockholders, to keep alive the corporation, for the purposes of suit, whilst at the same time the stock becomes a debt and the stockholder a creditor, sufficiently to bring the suit. It is not possible for either the stockholder or the stock to have the dual character ascribed.

" There is nothing in the acts applicable to this association prescribing the division of assets among the stockholders, nor anything changing the status of the stockholders. Of course, the Act of 1859 limits the duration of the association to twenty years. A dissolution and division must take place then and may take place before. Nothing is said or to be inferred as to the method of winding up when the stock is fully paid. The practical difficulties that are met when the stock is fully paid, were not, perhaps, anticipated in the beginning of these enterprises ; they were certainly not provided against. It is evident that the acts ·contemplated that all stockholders would become borrowers. If such was the case, the winding up a series would require nothing but a cancellation of the stock and loans, since one would pay the other, unless some of the borrowers had become in default, and the ·association had purchased the property of the defaulting borrowers on foreclosure, and still held it. It was unforeseen that some of the stockholders would refuse to borrow, and that such refusal would necessitate the loaning of money otherwise than to the shareholders in the series to which the money belonged.            ·

" It was in evidence that the association had some sixteen parcels of real estate, of the aggregate value of more than $16,000. As more than half the funds of the association came from the series in question, it is fair to infer that more than half of ᴄthis real estate belonged to that series. This fact shows the absolute impossibility of this association dividing among its non-borrowing members $200 a share immediately upon the stock reaching that value. Much remained for the corporation to do before the series could be wound up. If any of the money was loaned otherwise than upon the stock of the series, there would be another obstacle to the winding up. An immediate conversion of assets would

[O'Rourke v. West Penn Loan, &c., Assoc.]

probably result in loss, a result which the association should avoid. The stockholders have the right to share equally in the assets, which would hardly be possible if the association was liable to suit and execution by every shareholder of a fully paid-up series. The assets would be so eaten up by costs of litigation and the forced sales of property, that little would be left for those who came last.

"We cannot see that building associations are exceptions to the general law governing corporations—that a shareholder cannot sue at law *qua* shareholder. It follows that if he wishes to participate in all of the profits of the association, he must wait until the corporation winds up the series to which he belongs. If he is not content to await their action, his only remedy is to withdraw, and to bring a suit at law as a withdrawing stockholder. Of course, there may be cases where he may invoke the aid of a court of equity."

"The plaintiff cited the case of Gormerly v. The Association, 3 W. N. C. 11, where the demurrer was sustained. As no opinion was filed, it is difficult to say what was the exact point decided, but an examination of the bill shows plaintiff averred that he was a creditor of the association, both on account of cash paid as dues on stock and for money advanced. No equity is revealed in the bill, if the plaintiff is considered simply as a creditor. As such he had an ample remedy at law. Had he based his claim on account of the payment of dues simply upon his rights as a stockholder, and not called himself a creditor, the decision would probably have been different. Upon this ground it seems the court was right in holding that the bill was defective.

"Rule to take off non-suit discharged."

The plaintiff took this writ, and alleged that the court erred in refusing to take off the non-suit.

*J. Joseph Murphy*, for plaintiff in error.—The claim of a holder of stock which has matured, presents a much stronger case for the exercise of a legal remedy than that of a withdrawing stockholder. When the series has run out, nought remains for the society but payment of a sum which has been declared by the corporation to be due, and which is fixed and determined by law at $200 per share. Upon maturity of the series, the holder of stock ceases to be merely a stockholder, for the reason that after the series has run out he becomes a creditor. As stockholder merely, he might have no legal or equitable remedy, except as laid down by the court below, to withdraw, but when the stock runs out, the possession of the stock becomes merely one of the incidents upon which his claim as creditor is based, the running out of the series being the accompanying incident, which together entitle him to demand and receive the sum of $200 per share. A holder of

[O'Rourke *v.* West Penn Loan, &c., Assoc.]

matured stock is not a mere stockholder, as is declared by the court below, as, from the moment the series ran out, he ceased to be entitled to any of the future earnings or profits of the corporation. No assessment or contribution can be required of him, and it has become the duty of the corporation to discontinue his claim by payment. The action was not brought by the plaintiff merely as a stockholder.

*J. Duross O'Bryan,* for defendant in error.—There are numerous cases which distinguish between the right of a creditor and of a stockholder, when these two capacities unite in the same person. That a stockholder may at the same time become a creditor, and as such, sue his corporation, there is no doubt, but it is necessary to make the distinction to entitle him to sue: Angel & Ames on Corporations, sect. 390; Pierce *v.* Partridge, 3 Metc. 44; Hill *v.* Manchester Waterworks, 2 B. & A. 545; Dunston *v.* Imperial Gas Co., 3 B. & Ald. 125; Marine Bank *v.* Biays, 4 Har. & Johns. 338; Brinham *v.* Coal Co., 11 Wright 49; United States Building Association *v.* Silverman, 4 Norris 394; Gormerly *v.* Association, 3 W. N. C. 11. The remedy for the enforcement of stockholders' rights is in equity because of the violation of trust: Angel & Ames on Corp., sect. 391; Larkin's Appeal, 2 Wright 458.

The judgment of the Supreme Court was entered, March 15th 1880,

PER CURIAM.—We affirm this judgment upon the opinion of the learned judge of the court below on the motion to take off the nonsuit.

Judgment affirmed.