# Laurel Run Building Association *versus* Sperring.

1. A stockholder in a building association, incorporated under the Act of 1859, can only "withdraw" during the active life of the association or of the series, and provided his stock is not incumbered or held in pledge by the association.

2. Under the circumstances of this case, *held*, that the plaintiff was not entitled to the privileges of a withdrawing stockholder.

April 14, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

Error to the Court of Common Pleas of *Luzerne county:* Of January Term, 1884, No. 28.

This was, in the court below, an appeal from the judgment of an alderman, in favor of the plaintiff, in a suit by J. B. Sperring against the Laurel Run Building Association, to recover the value of certain shares of stock in said association. The defendant pleaded non assumpsit, payment with leave, etc., and the case was referred to a referee under the Act of April 6, 1869, and supplements thereto.

The referee (Geo. K. Powell, Esq.), reported, inter alia, as follows :—

### CONCLUSIONS OF FACT :

*First.*—That the defendant is a Building Association chartered and organized under the provisions of the Act of Assembly approved the 12th day of April, 1859, and the supplements thereto.

*Second.*—That in October, 1873, plaintiff purchased five shares, and in January, 1874, two shares, of the first series of stock of said Association, all of said seven shares having been issued in July, 1871, and held by other persons from whom they were transferred to said Sperring ; he paying as many dollars as had been paid in on each share, but having no knowledge of their previous ownership.

*Third.*—That said plaintiff borrowed, at different times, from said Association, upon five shares of said stock and gave the seven shares of stock as collateral security for said loans.

*Fourth.*—That judgments were entered of record in the Court of Common Pleas of Luzerne county against James B. Sperring, said plaintiff, amounting in the aggregate to $1,000, and thus stood the record in February, 1877.

*Fifth.*—That at a meeting of the stockholders of said Association held 6th February, 1877, the said Sperring and nearly or quite every other stockholder being present, a motion was made and carried " that all stockholders pay in the sum of

[Laurel Run Build. Ass'n v. Sperring.]

$20.20 on each share, and those in the first series who pay. $20.20 on each share between this date and May meeting shall be entitled to the amount of their stock at $116 per share."

*Sixth.*—That pursuant to said motion a charge of $141.40 was entered on the books of said Association against said Sperring, it being a charge of $20.20 on each share held by him.

*Seventh.*—That the value of said Sperring's two free shares as per said resolution was $232, which exceeded the said assessment of $141.40 by $90.60.

*Eighth.*—That it was understood between the said Sperring and the said Association, that said Sperring's seven shares of stock should be cancelled, and the said maturing value of the said two free shares ($232) should be applied, so far as needed, in payment of the said assessment.

*Ninth.*—Pursuant to said understanding the secretary of the defendant Association informed plaintiff that there was a balance of about $90 due him, and subsequently the judgments against said plaintiff were satisfied of record.

*Tenth.*—The secretary of the said Association defendant charged up on the books of the Association against plaintiff various amounts, called " proportion of expenses," as follows, viz. :   September, 1878, $34.86 ; January, 1880, $26.49 ; April, 1880, $4.20 ; June, 1880, $2.80, and December, 1880, $6.30, aggregating $74.65, said amounts being apportioned upon seven shares of stock.

*Eleventh.*—6th July, 1881, plaintiff gave defendant notice of his withdrawal from said Association, and of his desire to have returned to him the moneys paid in by him and returnable to him as a withdrawing stockholder, and 8th August, 1881, instituted this suit.

## CONCLUSIONS OF LAW:

*First.*—The plaintiff, J. B. Sperring, having availed himself of the motion of 6th February, 1877, at or before the May meeting of 1877, he ceased to be a stockholder of the Association defendant, except so far as his claim for $90.60, the balance due him from the maturing value of his stock, gave him an interest.

*Second.*—No assessment to cover expenses incurred subsequent to said May meeting of 1877, could be legally laid upon the said J. B. Sperring, as the holder of said seven shares of stock.

*Third.*—The action of the stockholders of the Association defendant, as expressed in the motion passed 6th February, 1877, having been followed by the payment by said Sperring of the sum thereby charged against him, he, the said plaintiff,

[Laurel Run Build. Ass'n *v.* Sperring.]

became entitled, at or before the meeting held 22d May, 1877, to demand and receive from said Association the sum of ninety and sixty-hundredths dollars.

*Fourth.*—The notice of withdrawal given by plaintiff to the Association defendant, 6th July, 1881, was sufficient to entitle him to bring suit against defendant for whatever amount remained due and unpaid more than thirty days thereafter.

*Fifth.*—The plaintiff is entitled to judgment against defendant for $90.60 and interest as of 22d May, 1877, viz.: $121.55.

The Prothonotary will therefore enter judgment in favor of the plaintiff and against the defendant for one hundred twenty-one and fifty-five-hundredths dollars, with interest from this date.

The defendant filed, inter alia, the following exception to the referee's report:—

5. That the referee erred in not finding in favor of the defendant. The plaintiff not being such a withdrawing member as is contemplated by either the constitution or by-laws of the association or the Acts of Assembly.

The court overruled the exceptions, in the following opinion by Rice, P. J.

We cannot agree with the plaintiff's counsel in his contention, that the resolution of February 6, 1877, had the immediate effect of dissolving the plaintiff's relation with the Association as a stockholder and putting him in the position of a creditor. An election on the part of the plaintiff to accept the benefits of its provisions, and a compliance with its conditions were to say the least, required to accomplish that. Nor are we prepared to say that under no circumstance could the plaintiff have been charged with a proportionate share of losses and expenses which might have been incurred between the May meeting and July 6, 1881, when he gave formal notice of his withdrawal. But under the Referee's finding that the plaintiff availed himself of the benefits of the resolution before the May meeting, together with the evidence that the Association, in pursuance of the resolution, and to carry the same into effect, charged up against the plaintiff the amount of the assessment of $20.20 per share applied the thus watered value of his stock in payment of his loans, and declared a balance in his favor of $90.60, and without evidence as to subsequent losses or the nature of subsequent expense, by which we can determine the plaintiff's liability therefor, we cannot conclude that the Referee erred in entering judgment for the amount of said balance with interest. If the defendant Association denies the validity of the said resolution a different question would be presented; and we do not now

[Laurel Run Build. Ass'n v. Sperring.]

say that, if equity requires it, we may not under the authority of U. S. Building Association v. Silverman, 4 Nor., 394, control the execution.

The exceptions are overruled, the report of the Referee is confirmed and judgment is entered in favor of the plaintiff for the sum of one hundred and twenty-one and fifty-five one-hundredths dollars with interest from February 1, 1883.

The defendant took this writ of error assigning for error the above order dismissing the exceptions, confirming the referee's report, and entering judgment for the plaintiff.

The constitution of said association provided inter alia:—

*Article IX.— Withdrawal.* Any stockholder wishing to withdraw from the Association, shall have power to do so by giving thirty days' notice of his or her intention to withdraw, when he or she shall be entitled to receive the amount paid in by him or her, and such proportion of the profits as the By-Laws may determine, less all fines and other charges; *Provided,* That at no time shall more than one half of the funds in the treasury of the Association be applicable to the demands of withdrawing stockholders without the consent of the Board of Directors, and that no stockholder shall be entitled to withdraw whose stock is held in pledge for security. In case a number of members wish to withdraw at the same time notices shall take precedence according to their priority in date of service.

The by-laws provided:—

*XI.— Withdrawal.* Any stockholder wishing to withdraw from the Association shall be entitled to receive the amount of dues actually paid in by him or her, and interest thereon at the rate of six per centum per annum, less all fines and his or her proportion of expenses or losses incurred; *Provided,* That any one withdrawing during the first year of the Association shall not be entitled to any interest or profit.

The plaintiff's notice of withdrawal was as follows:—

WILKES-BARRE, 6th July, 1881.

CALVIN PARSONS, Esq., Treasurer, &c.

I desire hereby to give formal notice to the Laurel Run Building Association, in behalf of J. B. Sperring, Esq., that he has withdrawn from the said Association and desires to have returned to him the moneys paid in by him and returnable to him as a withdrawing stockholder, under the provisions of the Constitution and By-Laws of said Association.

W. P. RYMAN.

*Michael Cannon,* for the plaintiff in error.

*W. P. Ryman,* for the defendant in error.

10 OUTERBRIDGE.—22.

Mr. Justice PAXSON delivered the opinion of the court, April 28, 1884.

The rights of the plaintiff below as a withdrawing stockholder are fixed by the Act of 12 April, 1859, P. L., 544, and the constitution and by-laws of the defendant company. These limit his right of recovery to the amount of dues which he had already paid in, with interest thereon at the rate of six per cent. per annum, less all fines and his proportion of expenses or losses incurred. In point of fact he was allowed to recover not the withdrawal value of his stock, but its par value as reduced. That this was error is too obvious to need an extended discussion.

The plaintiff owned seven shares of stock in the first series. Upon five of these shares he had borrowed the full amount, $200 per share, and had given one or more judgments therefor, amounting to $1000, with the seven shares of stock as collateral. Two of his shares were what is called free stock, that is, it had not been borrowed upon, although placed with the others. In 1877 the association, owing it is stated to the general depression of business, passed a resolution reducing the par value of the stock from $200 to $116 per share that the stockholders pay in $20.20 per share, and that all of the stockholders in the first series who should comply with the resolution prior to the ensuing May meeting should "be entitled to the amount of their stock at $116 per share." The amount of plaintiff's assessment on his seven shares under this arrangement was $141.40 which was charged against his two free shares. He then procured satisfaction to be entered upon the judgments which the association held against him. No money was paid by the plaintiff and the effect of the transaction was the satisfaction of the judgments which were only paid in part, and an advance to him by the association of $141.40 on the faith and credit of his remaining two shares of stock. As a result of this somewhat questionable proceeding he held two shares of stock of the fixed value of $116 each = $232, upon which he owed the company $141.40, leaving an apparent balance due him of $90.60, which he would be entitled to receive upon the final winding up of the first series. That he was not entitled to sue for it at law was settled in O'Rourke *v.* West Penn. Loan and Building Association, 12 Norris, 308. To meet this difficulty on July 6, 1881, he gave notice of withdrawal, and subsequently commenced this suit, in which he was permitted to recover the above sum of $90.60 with interest. The result is to let him out as a withdrawal stockholder with a full share of the profits on the seven shares, and to avoid all losses in the winding up, resulting from expenses, depreciation of property, etc. On the five shares he

got his profit for the reason that his judgments were satisfied without payment, and on the two shares he gets the matured value of the stock. This result could not be reached without error somewhere.

Upon the trial below, assuming that he was a withdrawal stockholder, he should have been confined to his notice and permitted only to recover what he claimed therein, viz: "to have returned to him the money paid in by him and returnable to him as a withdrawing stockholder, under the provisions of the constitution and by-laws of the Association." The par value of the stock had nothing to do with the case and should not have been considered.

Just what amount of fines, losses and expenses the company were entitled to charge against him we are not called upon to say, for the reason that the plaintiff was not a withdrawing stockholder and could not have been under the Act of 1859, so long as his stock was held in pledge: Watkins v. Building & Loan Association, 1 Out., 514. It appears from the plaintiff's own testimony that the two shares for which this suit was brought were applied by his direction to his indebtedness or arrearages on the other five shares, as well as on the two shares in question. This as before stated was $140, no part of which has been paid. It was only charged. It would be further liable for all proper arrearages and charges, and for his proportion of losses which may have been incurred prior to his notice of withdrawal, conceding such withdrawal to be valid. For it is idle to say that when stock or a particular series of stock matures a holder is entitled absolutely to its par value. From such value must necessarily be deducted any expenses or losses incurred in winding up the association or the particular series. Such losses may be trifling or they may be serious. What the stockholders are entitled to under such circumstances is an equal division of the assets less expenses and losses.

Aside from this, assuming that the resolution of February 6, 1877 matured the stock of the first series, I am unable to see how a stockholder of that series can withdraw after such maturity. The plain object of the Act of 1859 was to permit a stockholder to withdraw during the active life of the association or the series. It makes no provision for a withdrawal after the stock has reached par, and the association exists only for the purpose of liquidation. Nor can any object be perceived for such withdrawal except to gain the right to sue immediately for the value of the stock. This would be giving an unfair advantage which the law does not favor.

The plaintiff has no right to recover in this action, and the Court below should have so instructed the jury.

This sustains the fourth and fifth assignments.     The others are not in conformity with the rules of Court.

> Judgment reversed and a venire facias de novo awarded.