CASE 2—ACTION TO ENFORCE MORTGAGE LIEN—FEB. 14.

# Globe Building & Loan Co.'s Assignee v. Wood, &c.

APPEAL FROM MONTGOMERY CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFF APPEALS.   REVERSED.

BUILDING AND LOAN ASSOCIATIONS—ASSIGNMENT FOR CREDITORS—
  WHAT CONSTITUTES INSOLVENCY—TRANSFER OF MORTGAGE PRO-
  PERTY—CREDIT OF LOAN OF DUES PAID ON STOCK.

Held: 1. Building and loan associations being invested by Ken-
  tucky Statutes, section 855, with all the powers and privileges
  granted to corporations generally, such an association is author-
  ized, when insolvent, to make an assignment for the benefit of
  creditors.

Globe Building and Loan Co.'s Assignee v. Wood, &c.

2. Where there was a panic among stockholders, and the associa-
tion could not pay the amounts due to withdrawing members,
nor obtain funds to lend its stockholders, and therefore could
not mature its stock, thus frustrating the objects of the associa-
tion, it was insolvent as a building and loan company. and was
therefore authorized to make an assignment for the benefit of
creditors.

3. Where the purchaser of land mortgaged to a building and loan
association by one of its members to secure a loan continued to
pay the dues on the member's stock, it is immaterial. so far as
affects the extent of the lien of the association, whether or not
there was a transfer of the stock, as neither the mortgage nor
the obligation secured thereby was varied in any particular by
the transfer of the property.

4. Where an insolvent building and loan association has made an as-
signment for the benefit of creditors, a borrowing member, when
sued by the assignee, is not entitled to credit on his loan by the
amount of dues paid on his stock, and properly carried to the
stock account, except to the extent that the court administering
the assigned estate has determined that his share of the stock ac-
count will not be needed to pay expenses, losses, and costs of ad-
ministration.

KOHN, BAIRD & SPINDLE, JAMES P. GREGORY and BEN W.
HALL, FOR APPELLANT.

This appeal involves the question of the application of payments
made upon a loan by a borrowing member of a building and loan
company, after the company is insolvent and is in process of liq-
uidation.

1. Can a building and loan company in Kentucky make a voluntary
assignment?

That such company under the laws of this State can liquidate its
affairs through a deed of volunatry assignment seems to us to
be beyond question.

The power in a corporate body to make a voluntary deed of assign-
ment lies with the board of directors unless specially prohibited
by the charter.

The appellees and the stockholders of the Globe Building & Loan
Company are estopped to deny the power of that company to exe-
cute the deed of assignment in question, because the appellees
and all the stockholders have acquiesced therein, have ratified and
have elected to take under it.  Rogers v. Raines, 100 Ky., 295;
Simpson v. Building Co., 19 Ky. Law Rep., 1176; Reddick v.
Building Co., 20 Ky. Law Rep., 1720; Ky. Statutes, section 539,
855, 74, 75, Christian's Appeal, 102 Pa. Stat., 189; Harvey v. Cub-

bedge, 75 Ga., 773; Thompson on Corp., vol. 5, sec. 6467; Building Co. v. Juecksch, 51 Md., 198; 49 C. L. J., Mo., 459; Sumrall v. Building & Loan Co., Assignee, 20 Ky. Law Rep., 1801; Forwood v. Eubank, Assignee Globe Building & Loan Co., 20 Ky. Law Rep., 1842; Chapman v. Young, 65 Ill. App., 131; Towle v. Building Co., 61 Fed., 447; Boynton v. Rowe, 72 N. W., 257; Burrell on Assignments, sec. 64; Thompson on Corp., sec. 6473; Am. & Eng. Ency., (2 ed.), vol. 3, pp. 32, 34; Ky. Stats., sec. 561; Bell & Coggeshall Co. v. Ky. Glass Works, 20 Ky. Law Rep., 1089; 7 Ency. Pleading and Practice, 361, 364; Thomas v. Jocelyn, 36 Minn., p. 1; Connehan v. Thompson, 111 Mass., 270; Burrell on Assignments, sec. 503; 3 Am. & Eng. Ency., 133; Rapalee v. Stewart, 27 N. Y., 314; Littlejohn v. Turner, 73 Wis., 113; (S. C., 40 N. W., 621); May v. Wannemaker, 111 Mass., 202; Pearce v. O'Brien, 129 Mass., 314; Chaffee v. Bank, 71 Me., 514; (S. C., 26 Am. Rep., 346); Abile v. Schlickenmeier, 51 Minn.; (S. C., 52, N. W., 574); Vaught v. Ohio Fair Co., 20 Ky. Law Rep., 1471.

2. It was error to credit the appellees on the loan with dues paid on stock. Rogers v. Raines, 100 Ky., 295; Reddick v. Building Co., 20 Rep., 1720; Eckler v. Building Co., 20 Ky. Law Rep., 1770; Sumrall v. Building Co., 20 Ky. Law Rep., 1801; Gibson v. Building Co., 48 N. E. Rep., 580; Building Co. v. Silverman, 85 Pa. Stats., 394; Christian's Appeal, 102 Pa. Stats., 188; Criswell's App., 100 Pa. St., 488; Everman v. Schmidt, 41 N. E., 139; Sullivan v. Stucky, 86 Fed. Rep., 49; Rabbitt v. Wilcoxen, 75 N. W., 306; Moran v. Gray, 38 Atl. Rep., 668; Wear v. Granite State, 38 Atl., 643; Rogers v. Hargo, 92 Tenn., 35; Carpenter v. Richardson, 46 S. W., 452; Lecky v. Building Co., 76 N. W., 625; 47 Cent. Law Jour., 443; Towle v. Building Co., 75 Fed. Rep., 938; Strokin v. Bldg. Co., 8 Atl. Rep., 843; Engelhard v. Bldg. Co., 42 N. E., 710; Hohinshell v. Bldg. Co., 41 S. W., 948; Latimer v. Bldg. Co., 81 Fed. Rep., 776; Cook v. Kent, 105 Mass., Curtis v. Granite State, 36 Atl. Rep., 1023; Kinston v. Bldg. Co., 69 N. W., 889; Hawley v. Bldg. Co., 52 Pac., 408; U. S. Bldg Co. v. Shaw, 77 N. W., 1006; Hale v. Cairo, 77 N. W., 1010 (Ib. 48, Cent. Law Jour., 153); Wilcoxen v. Smith, 78 N. W., 217; Russell v. Pierch, 80 N. W., 118; Phelps v. Bldg. Co., 80 N. W., 120; 4 Am. & Eng. Ency., (2 ed.), 451; Jones v. Sidwell, 54 N. E., 752; Meyer v. Bldg. Co., 54 N. E., 755.

3. A mortgagor's vendee is in no better position than the mortgagor. It is a well-established principle of law, that a person dealing with a corporation, or an agent, is bound to take notice of its charter. First Nat. Bank v. Kiefer Milling Co., 95 Ky., 97; Jamison v. Bank, 25 N. E., 264 (122 N. Y., 135); McCormick v. Bank, 165 U. S., 538; Morgan v. Bldg. Co., 33 S. E. Rep., 964;

Globe Building and Loan Co.'s Assignee v. Wood, &c.

Bldg. Co. v. Hungerbuehler, 93 Pa. St., 258; Spring Garden Co. v. Bldg. Co., 46 Pa. St., 493; Bldg. Co. v. Mixwell, 84 Pa. St., 313; Pfeister v. Bldg. Co., 19 W. Va., 676; Bldg. Assn. v. Collins, 27 Conn., 142; Thompson on Building Associations, 421, sec. 207; Figart v. Haldeman, 75 Ind., 564; Halsey v. Reed, 9 Paige, 445; Russell v. Peyster, 7 N. Y., 171; Trotter v. Hughes, 12 N. Y., 77; Stuyvesant v. Ins. Co., 43 Pac. Rep., 144; Hammonds v. Bigelow, 115 Ind., 363; (S. C., 17 N. E. Rep., 192); Chemical Nat-Bank v. Wagner, 93 Ky., 527.

ED. C. O'REAR FOR APPELLEE.

It is not attempted by appellee to plead usury against any part of appellant's attempted recovery. Appellant sold some of its stock to appellee, Wood, and loaned him $1,200, secured by lien on certain real estate and hypothecation of the stock. Subsequently, Wood sold the property to appellee, O'Rear, who undertook to pay a stated consideration for it, part cash, &c., and balance the debt then owing by Wood to the Building & Loan Co. O'Rear did not buy, nor was there assigned to him any stock in the company. His relation to the company was that of debtor to the amount then owing it by Wood, usury and all. That sum he undertook to pay, offered to pay, and did pay into court.

The building company made an assignment for benefit of creditors, and its assignee sought to hold appellee, O'Rear, as a stockholder on facts above stated, and sought to credit some part of the payments made by O'Rear from time to time, on the "stock account" of Wood, undertaking, evidently, to apply the doctrine of Rogers v. Raines, to this transaction. Appellee O'Rear does not object to such application of *Woods' own payments*, but insists that all of his payments should be applied to the discharge of whatever sum (including usury) Wood was owing on the date of the sale of the real estate to O'Rear, and interest from date of such sale.

ED. C. O'REAR AND ROBT. H. WINN, FOR APPELLEE, IN RESPONSE TO BRIEF OF APPELLANT.

POINTS AND AUTHORITIES.

The association was not insolvent because:

*First.* It had not sustained the losses sought to be embraced in its July 1st, 1897, statement (upon which assignment was based).

*Second.* It could and should have kept its liabilities as small as its assets by charging losses up against stockholders. Ky. Stats., sec. 869.

*Third.* No demand could have been prosecuted against the association. Ky. Stats., sec. 860. Also the company's by-laws. Where the assignor is solvent and it appears that assignment was made to delay creditors, the assignment is void. Ky. St., sec. 75; German Bank v. Nunes, 80 Ky., 334; Bank of Commerce v. Payne, &c., 86 Ky., 462; Vernon v. Morton, 8 Dana, 263.

In order to withhold credit for stock payments with settling borrowers, it must appear that the association is *insolvent.* Reddick v. Building Co., 20 Ky. Law Rep., 1720.

OPINION OF THE COURT BY JUDGE DuRELLE—REVERSING.

Appellee Wood became a member of the Globe Building & Loan Company by subscribing for twelve shares of stock, and in October, 1894, borrowed $1,200, for which he executed his note, and to secure the payment thereof pledged the shares of stock, and executed a mortgage to the company upon a lot of land in Mt. Sterling, the mortgage being duly recorded. In March, 1895, Wood sold the property to appellee O'Rear, the consideration recited being "that the second party pay to the Globe Building & Loan Company of Louisville, Ky., the loan of $1,200 the first party owes to said company, less the sums heretofore paid by said first party, which loan the first party has the option to pay in monthly payments, and which loan is secured by a mortgage on the lot hereinafter described, and said second party assumes and agrees to pay to W. H. Holt two notes of $144 each, and the interest thereon, which notes are secured by a lien on said lot and other valuable considerations." There appears to have been no formal transfer from Wood to O'Rear of the stock in the company, but on April 15, 1895, appellee O'Rear addressed to the company the following letter: "Dear Sirs: I will make the payments, so long as I own the property, of the $19.20 per month on the J. C. Wood stock, on which he has the loan secured by mort-

gage on property sold me, but for the month of February I do not owe it. Mr. Wood was to pay that. He is also to pay the transfer fee. I haven't the pass book. Please have him attend to that. He being your agent, you, of course, have it in your power to fully protect yourselves in this matter." On the 5th of April, 1895, Wood wrote the company, saying: "Inclosed you will find my report for March, and ch. to cover same. This makes a complete settlement of all I owe as your collector, and I trust you will find it satisfactory. Rspt., John C. Wood. P. S. I have sold my house on which you hold a mortgage to Judge Ed. C. O'Rear, of this place. You may look to him for all future payments. Please have the loan transferred on your books." On July 1, 1897, the company executed a deed of assignment to appellant Eubank, who accepted the trust, and has since been administering the estate in liquidation. Appellee O'Rear sold the property to appellee Bright, and in January, 1899, the appellant filed his petition seeking the recovery of $999.92, asserting a mortgage lien to secure the payment thereof upon the lot of land, and praying a sale to pay the indebtedness. The appellees Wood and O'Rear filed a joint answer, admitting the execution of the note and mortgage by Wood, and his subscription for the stock, but denying "the right or authority of the plaintiff to execute a deed of assignment," and, upon information and belief, denying that the company "is insolvent or ever was." They also denied that there was any transfer of the stock from Wood to O'Rear, or any acceptance of such stock by the latter. They aver, in substance, that upon the sale of the property appellee O'Rear assumed and agreed to pay the company $1,200 with 6 per cent. from the date of the deed until paid, and that the company accepted this undertak-

ing in lieu of the debt on the property, and exonerated Wood from further liability. The answer was accompanied with a tender of payment of the amount of the debt, after crediting all payments made by either Wood or O'Rear upon the note, without regard to whether any part of such payments had been taken by the company as payments of dues upon stock by either party. By reply, the affirmative averments of the answer were put in issue.

The trial court seems to have allowed credits for all sums paid by either of the appellees named, and appellant claims that this was error, in so far as credit was allowed for the sum of $7.20 per month which the company carried to its account of dues upon the stock, and this stock account, it is insisted, is to be kept inviolate for the purpose of paying the expenses of the company, the losses incurred, and the cost of liquidation, except in so far as the court under whose care the liquidation is being conducted may be able to determine what proportion, if any, of said stock account will certainly not be needed for those purposes. No question of fact is presented. The controversy is entirely upon questions of law, and on the conclusions which are to be drawn from the facts shown.

Waiving the question whether the issue is sufficiently presented as to the power of the company to make an assignment, and its insolvency as a basis to justify making the assignment, there would seem to be little doubt that, under proper circumstances, a building and loan company can, under the law of Kentucky, liquidate its business by the agency of a voluntary assignment. We find nothing in the statutory provisions as to building and loan companies which seems, either directly or by implication, to prohibit their making voluntary deeds of assignment. On the contrary, under section 855, Kentucky

statutes, they are invested "with all the powers and privileges, liabilities and restrictions, granted to, or imposed upon, corporations generally under the first article of this chapter." It is true that there seems to be no express provision in the corporation law authorizing corporations to make voluntary assignments, but the right of corporations generally to make such assignments has been uniformly recognized in this State, and in section 74 *et seq.*, Kentucky Statutes, the right of all debtors, whether natural or artificial persons, to make such assignments is recognized, subject only to the exception (section 75) that the deed can be set aside when the assignor is solvent, and has made the assignment to cheat, hinder, and delay creditors. The right of such company to make an assignment has been recognized in various States. Christian's Appeal, 102 Pa. St., 189; Harvey v. Cubbedge, 75 Ga., 792; Association v. Juecksch, 51 Md., 198, and 49 Cent. Law J., 459; 5 Thomp. Corp., section 5467. And, while this question seems not heretofore to have been directly presented in this State, the right has been recognized in the Reddick case (Ky.) 49 S. W., 1075; the Sumrall case (Ky.) 50 S. W., 69; and the Forwood case, Id., 255.

When we come to consider whether a building and loan association is so insolvent as to justify making an assignment for the benefit of its creditors, it is manifest that we must apply a somewhat different rule from that applicable to an ordinary corporation whose business is almost entirely with outsiders. In one sense a building and loan company has little, if any debts, owing to outsiders. If we are restrained from considering any obligation of the company except such as are due to outsiders, it is scarcely possible that such a company could become insolvent. But it does incur obligations to its stockholders, the

maturity of which can be precipitated at the option of the
stockholders by simply giving notice in a book provided
for the purpose. Section 860, Kentucky Statutes. It
is true that that section provides that "at no time shall
more than one-half the funds in the treasury be applic-
able, without the consent of the directors, to the demands
of the withdrawing members." But that provision does
not prevent such demands being due, and, if it did operate
to postpone the time of maturity, would not operate to
prevent such demand, constituting a liability. An attempt
on the part of the company to avail itself of this provision,
in order to postpone the satisfaction of stockholders who
might give notice of withdrawal, would have precipitated
a panic among the stockholders, with results far more
disastrous than could be produced by the assignment.

There is no analogy, as is suggested by appellees, be-
tween the usury contracted for on loans by building and
loan associations and that which is collected by banks.
The banks deal in short-time loans, with a limited class
of people engaged in business, and who depend on the
banks for the accommodation necessary to carry it on.
A refusal to pay the current rate of usury demanded by
the banks would be an effectual bar to further accommo-
dation, and in a vast majority of cases would necessitate
the withdrawal of the customer from business. The
stockholders of a building and loan company who borrow
from the funds of the company have, as a rule, but one
transaction with the company. When, from any cause,
the contract fails to be carried out, there is no expecta-
tion of future favor, and consequently no fear of future
denial. It may be safely assumed that, after the de-
livery of the opinion in the Simpson case, 41 S. W., 570,
there would not be one case in a hundred thousand fore-

closure suits in which the defenses which were sustained
by that opinion would not be taken advantage of. It
was therefore proper for the company to charge off from
the account of its assets the usury which had been em-
braced in them, and which was uncollectible under the
Simpson opinion.

It appears that, in the brief period before the assign-
ment, notice had been given for the withdrawal of stock
to the withdrawal value of $90,000, $50,000 of which was
collectible on the date of the assignment, unless advant-
age were taken of the provision above referred to in sec-
tion 860, which would undoubtedly have increased the
haste of the stockholders to withdraw. There was a
panic among the stockholders, and a scramble among the
non-borrowers to withdraw from the association. The
treasury was practically empty. Dividends had been de-
clared upon the assumed profits of the concern, which
were in a great measure based upon the usury which the
decision in the Simpson case put an end to. In the case
of non-borrowing members, these profits had been de-
clared from year to year, to hasten the maturity of the
stock, and had been withdrawn, or were being sought to
be withdrawn, by the withdrawing members. In the case
of borrowing members, these assumed profits had also been
declared, and had been carried to the credit of stock-
holders to aid in maturing stock, and in thereby canceling
the indebtedness secured by its pledge. By a stroke of the
pen, the basis of this assumed profit was swept away.
It is now contended that all of this loss, present and pros-
pective, should have been apportioned among the stock-
holders remaining in the association, and charged up to
reduce the withdrawal or book value of the stock, but that
the company should have continued in business, notwith-

standing the fact that it had practically nothing with which to meet the applications for withdrawal, or that proceedings for a receivership should have been instituted.

As to the receivership, it may be said that, if this condition of affairs did not amount to insolvency, there would be no justification for it, assuming, what is shown by the evidence in this case, that the affairs of the corporation were honestly administered, though, up to the date of the Simpson opinion, upon a mistaken basis. By pursuing the other course, the inevitable result would have been that every dollar that came into the treasury would have been absorbed by the non-borrowing members, with the result of ultimate insolvency, and of casting the entire burden of the management of the company, its expenses and its losses, including losses which had occurred upon the stock of members who had withdrawn before the Simpson opinion, upon the borrowing members, and in addition the cost of administering the estate as an insolvent one. We do not regard this as a proper course, on account of its manifest lack of equity to the borrowing stockholders. On the contrary, we believe it not only to have been the right of the directory, but its duty, under the circumstances which appeared in this case, to take measures for the equitable administration of the assets of the concern as an insolvent one. The company had been organized and created for certain specific objects. Those objects had been entirely frustrated, and it was impossible for it to meet its obligations. It could not pay the amounts due to withdrawing members, nor obtain funds to lend its stockholders, and therefore could not mature its stock. We are therefore of opinion that, as a building and loan company, it was insolvent, and the assignment was properly made.

We think it immaterial to consider whether there was an actual transfer of the stock, or an actual acceptance or agreement to accept such transfer. The agreement expressed in the letter quoted, *supra*, was to continue the payments on the J. C. Wood stock. Whether such payments were made by appellee O'Rear upon the stock as belonging to him or upon the stock as belonging to Wood is immaterial. They were made, and must have been made, upon the obligation secured by the duly-recorded mortgage in favor of the company. That mortgage and that obligation can not be considered as having been varied in any particular by the deed from Wood to O'Rear, of which the company was not bound to take notice. It had the right to rely upon the security which it had, and upon the terms of the agreement the performance of which was thereby secured. It could take no personal judgment against appellee O'Rear, and does not now seek to obtain one. But it was entitled to enforce its lien to secure the fulfillment of the contract which it made with Wood, irrespective of any subsequent transfer by him. In the recent case of United States Building & Loan Ass'ns Assignee v. Rowland (decided Feb. 6, 1901) 60 S. W., 707, and Globe Building & Loan Co.'s Assignee v. Stephens (decided Feb. 8, 1901) 60 S. W., 723, it was held that no credit in such cases should be allowed for the sums which had been properly carried to the stock account, except when the court conducting the administration has become satisfied that the entire amount of the stock account will not be needed to pay the expenses, losses, and cost of administration. In the case at bar it appears that credit has been conceded for the dividend declared under direction of the court of 25 per cent. upon

the withdrawal value of the stock. This credit should be allowed. But for the errors indicated, the judgment is reversed, with directions to set aside the judgment and enter a judgment in accordance with this opinion.