(41 Misc. Rep. 363.)

### PEOPLE v. NEW YORK BUILDING LOAN BANKING CO.

(Supreme Court, Special Term, New York County. September, 1903.)

1. BUILDING ASSOCIATION—INSOLVENCY.

A building association incorporated under Laws 1851, p. 234, ·c. 122, is insolvent where it is unable to repay the contribution of its stockholders.

2. SAME—LIABILITIES.

Payments on shares of stock of a mutual building and loan association under Laws 1851, p. 234, c. 122, are liabilities of the association in determining its solvency, notwithstanding any conditions under which such shares may have been issued.

.3. RECEIVERS—SALE OF ASSETS.

Laws 1902, p. 114, c. 60, § 3, providing that a receiver of a building association shall proceed immediately on his appointment to convert the assets of the corporation into cash, means that he shall proceed with reasonable diligence, and with such speed as will accord with the circumstances, and does not require him to sacrifice the assets.

Action by the people against New York Building Loan Banking ·Company.  Motion for appointment of temporary receiver.  Granted.

John Cunneen, Atty. Gen., for plaintiff.

A. C. & J. P. Eustace (D. C. Robinson, of counsel), for defendant.

DUGRO, J.  This is a motion for the appointment of a temporary receiver, made in an action brought for the dissolution of the defendant, a building, mutual loan and accumulating fund association, incorporated under chapter 122, p. 234, of the Laws of 1851, upon the ground, among others, of insolvency.  As I understand the parties to have stipulated, in substance, that the evidence taken by and the report of the referee appointed in an earlier similar motion in the action were to be considered as though the referee had been appointed in this motion to take evidence and report his opinion, I have considered the evidence and report.  It appears that the bank examiners reported that the defendant was insolvent to the extent of about $1,189,568.47, and that the referee finds the insolvency to be in extent .about $317,467.31.  The difference between the two appears to be made up mainly of an item called "unearned premiums," which the examiners considered a liability and the referee did not.  The latter was right in this matter.  I have been unable to agree with the referee in his view that the item referred to in his report as $196,199, · and designated as "reserve under article 70," is a liability, and in some other minor matters, but find no reason to believe that he is wrong in his conclusion as to defendant's insolvency.  It seems to me that the defendant has been saved from a much more disastrous insolvency, chiefly through the increasing values of real estate during the last few years.  Such associations as the defendant constitute a class of corporations that are in many respects different from other corporations. They possess privileges and are under liabilities peculiar to themselves. Their business and operation is based upon the idea that as to the shareholder the association stands in a trust relation in respect of the funds contributed.  They receive them, and administer them, and finally account for them and the profits and losses and expenses of the business to the contributor, and of these associations Endlich says in his work on Building Corporations, § 511:  ·

"It is the liability of the building association not to pay its outside debts (for that does not seem to have ever occurred, and, in the nature of things, can scarcely be thought of), but to satisfy the demands of its own members that has been recognized as an insolvency."

The defendant appears to accept this view, and so concedes that the sums paid in or credited to shareholders, exclusive of those in Class W, are properly charged as liabilities; indeed, the proposition involved in this concession is too well settled to be disputed.  See Towle v. Am. Bldg. Loan & Inv. Soc. (C. C.) 61 Fed. 446; People v. Empire Loan & Investment Co., 15 App. Div. 69, 44 N. Y. Supp.

308. It seems to me that, taking a reasonable view most favorable to defendant of every other question, that in reference to Class W shares leaves matter so that the question of defendant's insolvency depends upon whether the Class W shares, in amount $530,071.08, should be considered as a liability or not. Upon the argument it was contended on behalf of defendant that the item as to these shares should not be regarded as a liability, because it is stated in article 29 of the defendant's articles of association that the sums paid in or credited on Class W shares, up to their par value, shall not be withdrawable, but shall stand as a guaranty for the payment of all the obligations of the company. A careful consideration of the question leads me to the opinion that this contention is without merit. I will endeavor to explain my reason for concluding accordingly. The designation of Class W shares in article 29 as a guaranty fund for all the obligations of the company does not more, in substance, than make all the shares not in Class W preferred shares as to principal. The obligations of the company may be divided into two classes: (1) Obligations to sharesholders upon their shares; (2) all other obligations. Now, all the shares stand practically as a guaranty (in the sense in which that word is used in the articles of association) for the second class, for, before shareholders can divide among themselves the property of the association, all obligations to others than to shareholders must be satisfied, so that as to this class of obligations the provision that Class W shares should stand as a guaranty made them no different with reference to their relation to these obligations from any other shares all standing substantially in the same relation. More than this, the shareholders are declared, by the statute under which the association is organized, "liable to the creditors of the said association, to an amount equal to the amount of stock held by them respectively, for all debts contracted by such association." Laws 1851, p. 234, c. 122. That the making of Class W shares a guaranty (assuming, but not determining, that they can be so made) for the payment of the moneys received or credited on the shares of the other shareholders makes the latter shares preferred as to principal seems so clear that it does not appear to me to need explanation. That such an association may issue preferred stock, see People ex rel. Fairchild v. Preston, 140 N. Y. 549, 35 N. E. 979. 24 L. R. A. 57; Am. & Eng. Encyc. of Law, vol. 4, p. 1031; Endlich on Building Associations, §§ 462, 464. So much of the provision of article 29 as provides that the moneys paid in or credited to Class W shares are not withdrawable simply makes it so that these shares do not have the incident of withdrawability in common with the remaining shares. It might have been so that no shares could be withdrawn until the termination of the association, and, if it were so, the shares would not thereby have lost their feature of being entitled to be taken as liabilities in determining the question of the company's solvency. It seems, therefore, clear that the mere permission of withdrawal to certain shareholders does not affect the remaining shareholders, so as to deprive them of a right which they would otherwise be clearly entitled to; that is, of having their shares considered as liabilities in a determination of the question of the association's insolvency.

Being of the opinion indicated, it is unnecessary to refer to the questions raised as to the sufficiency of the complaint so far as it contains other allegations than those having reference to the insolvency of the defendant, for, with insolvency alone in issue (and that it is in issue is conceded), and the proof, there should be a receivership. I do not care to refer to the methods used in the conduct of the business of the defendant further than is indicated by the disposition of this motion, and to say that they were not, so far as shown, of such a character as to serve as a deterrent to the making of the order applied for. It is probable that the allegations in the complaint referring to an unsafe manner in which the business was conducted and other kindred allegations present no statements of fact sufficient to call for a denial. Such allegations in such a complaint have been repeatedly passed upon by the Appellate Division, and held to be good; but in May last the Court of Appeals in People v. Manhattan Real Estate & L. Co., 175 N. Y. 133, 67 N. E. 219, marked them with its disapproval, and fixed their insufficiency for the purposes of a complaint in such an action as the present. It seems to me that, unless the complaint is amended, there will probably be no trial in this action of any question as to the unsafety of the manner in which the defendant is conducting its business. I have received certain papers, signed by various persons, purporting to be declarations of ownership of Class W shares. Each of these papers contains a statement that the shares were purchased under article 29; that the holder was informed of a specified action of the bank department, an opinion as to the effect of article 29, together with an assurance that no claim contrary to the opinion had ever been made by the signer or other shareholders of the Class W shares. The papers further contain declarations as to the interest of the signers and others, and several protests, and close with declarations of opinion. When these papers were handed to me, they were stated to be releases. They are not releases, and why they were presented I am at a loss to understand. They are not pertinent to the questions to be determined. The motion for a temporary receivership will be granted.

In connection with the matter of a receivership, it may be worth stating that the dire consequences which the defendant professes to fear because of section 3 of chapter 60, p. 114, of the Laws of 1902, which reads that the receiver "shall proceed, immediately upon his appointment, to convert the assets of the corporation into cash," and which defendant claims is applicable, and will cause the receiver to act so quickly as to sacrifice the defendant's property, are not to be apprehended. The statute provides that the receiver shall proceed immediately, but by no means is it intended that he shall proceed as quickly as possible. He is expected to use reasonable diligence, and to proceed with such speed as will accord with the circumstances, considering matters reasonably, and with a due observance of the result to be obtained. Upon the settlement of the order I will hear counsel in accordance with the requests made.

In view of the criticism of the report of the referee, I feel called upon to remark that it seems to me the referee has done very com-

mendable work in making the inquiry and preparing his report, and, though I do not agree with all of his conclusions, his findings and conclusions have been so presented, and his reasons for his conclusions so stated, as to be of material aid to me in disposing of the questions to be determined.

Ordered accordingly.