## Catsiff v. Elanore Rothschild Building and Loan Ass'n.

*Felix & Felix,* for plaintiff; *S. Englander* and *V. H. Blanc,* for defendant.

LEWIS, J., March 19, 1930.—Plaintiff sues in this action of *assumpsit* as a stockholder of the defendant building and loan association to recover the value

of her stock, which, she avers, was, by the board of directors of the defendant, declared matured on the first Monday of October, 1928. To the statement of claim filed, the defendant replies that it "was insolvent prior to and since October, 1928, and, therefore, said stock never matured." It also resists payment upon the ground that in June, 1929, the stockholders agreed upon a voluntary liquidation of the association. The matter is before the court on a rule for judgment for want of a sufficient affidavit of defense.

"The usual scheme or plan of such (building) association is that a member shall pay into the treasury thereof a certain stated sum weekly or monthly for each share of stock issued, and that such payments shall be continued until therefrom and from premiums, fines and interest, and from other sources of profit, the capital of the corporation shall be sufficient to pay on each share of stock a sum previously agreed upon, at which period each stockholder shall be entitled to have his share so paid to him and to withdraw from the corporation or association:" 4 Ruling Case Law, § 2, page 343.

"In their original conception, the object of such associations was to enable those of small means and income to acquire homes and build houses, and thus become better citizens and more identified with the growth and welfare of the country, and the loan feature was a mere incident to effect this primary object. The theory was that persons whose earnings were small might become, by a system of compulsory saving, the owners of homesteads either at the end of a certain time or in anticipation of it:" McCauley v. Building and Saving Ass'n, 97 Tenn. 421.

"Building and loan associations are peculiar corporations, in that at the inception a share therein has only a nominal value and payment therefor is made at the end, rather than at the beginning, and in that the capital may be diminished at the will of the stockholder by his withdrawal:" 9 Corpus Juris, § 4, page 921.

The association is bound to mature the stock as soon as it can do so from its earnings and other resources in which the members are entitled to share: 9 Corpus Juris, § 49, page 944.

It is urged upon us that the board of directors having declared as matured the stock of the plaintiff, she ought to have a judgment. While a declaration of maturity by directors is necessary and sufficient for the bringing of suit for the value of the shares, such declaration is not otherwise a condition precedent to maturity, nor, where made, is it conclusive: Callahan's Appeal, 124 Pa. 138.

"A mistaken declaration of maturity when stock is, in fact, not matured will not make the stockholder a creditor nor put him in a position of the holder of matured stock in subsequently winding up the affairs of the association when insolvent:" Sundheim's Law of Building and Loan Associations (2nd ed.), page 56.

What is insolvency, in so far as the term is applicable to the operation of building associations?

Mr. Sundheim, in his work on building and loan associations, at page 180, makes this statement: "The insolvency of building and loan associations is unpleasant to contemplate or to write about. Fortunately, instances of insolvency have been few, and the losses, in comparison with other business or bank failures, have been slight."

Against that statement we have the recent decline in the value of real estate and the extraordinarily large number of foreclosure proceedings which have culminated in a condition where we have a sheriff's sale list of over a thousand properties per month in Philadelphia County. That the value of the

assets of many building and loan associations have been impaired, if not utterly destroyed, cannot be doubted. The unprecedented number of fore-closures on first mortgages, which ordinarily are prior to the liens of the building and loan associations and which result in the wiping out and dis-charge of their liens and security; the failure on the part of the members to continue payment on their shares; and the extraordinary number of requests for withdrawals have created a temporary condition of chaos in the relations of the public to these financial associations.

"When a bank fails it is taken as a matter of course and results in no serious disturbance in the business of other banks. People still have faith and confidence in, and entrust their savings and capital to, other banks, but the insolvency of a building and loan association is a reflection on all associa-tions and becomes a family and local tradition:" Sundheim's Law of Build-ing and Loan Associations, § 176, page 180.

The losses incurred by some building associations within the last several years have been occasioned by the reductions in the real estate market and the impairment in the value of the securities taken by these associations for the money advanced to the borrowers. Not only have these losses greatly affected the profits of these building and loan associations but they have brought about a condition of market insolvency of a large number of such institutions.

While corporations are generally held to be insolvent when the assets are insufficient to pay their creditors exclusive of stock subscription, building and loan associations are *sui generis* and are said to be insolvent when they can-not, besides paying their general creditors, pay back to their stockholders the amount of their contributions dollar for dollar: Kurtz *v.* Bubeck, 39 Pa. Superior Ct. 370; People *v.* New York Building Loan Banking Co., 41 Misc. 363; 84 N. Y. Supp. 844; Globe Building, etc., Co. *v.* Wood, 110 Ky. 4; 22 Ky. Law, 1500; 60 S. W. Repr. 858.

The language of District Judge Maxey, in Gunby *v.* Armstrong, 133 Fed. Repr. 417, 426 (Circuit Court of Appeals, 5th Circuit, 1904), is quite instruc-tive. During the course of his opinion, he says: "If the term 'insolvency' as applied to a building association be construed to mean mere inability to pay its creditors, then the association was not insolvent at the time the court took charge of its affairs by the appointment of a receiver. But such is not the true meaning of the term in its application to corporations of that character. The insolvency of a building association, to employ the words of another, is a peculiar thing. 'It is the inability of the building association not to pay its outside debts (for that does not seem to have ever occurred, and in the nature of things can scarcely be thought of), but to satisfy the demands of its own members, that has been recognized as an insolvency:' Endlich on Building Associations (2nd ed.), page 511; Towle *v.* American Building L. & Invest. Society (Circuit Court), 61 Fed. Repr. 446. And when in the course of its business it reaches a point where it finds itself unable to carry to completion the purposes of its creation—in a word, when the consummation of the scheme becomes impracticable, it may be said to be unable to satisfy the demands of its own members."

In Towles et al. *v.* American Building L. & Invest. Society (Circuit Court, N. D., 111), 61 Fed. Repr. (1894) 446, Grosscup, District Judge, said: "These associations are essentially corporate copartnerships. They have no function except to gather together, from small stated contributions, sums large enough to justify loans. Their officers are the agents of every stockholder. They have no debtors or creditors except the stockholders, and whether the stock-holder is a creditor or debtor depends on whether he has exercised his privi-

lege of borrowing money from the common fund. The insolvency of such an institution is *sui generis*. There can be, strictly speaking, no insolvency, for the only creditors are the stockholders by virtue of their stock. The so-called insolvency is such a condition of the affairs of the association as reduces the available and collectible funds below the level of the amount of stock already paid in. The association is said to be insolvent when it cannot pay back to its stockholders the amount of their actual contributions dollar for dollar."

Is the defendant building association insolvent within the legal definition of the term? The affidavit of defense does not give sufficiently the facts from which that conclusion can be drawn. Voluntary liquidation does not necessarily indicate insolvency, and were this the only question to be decided, it may be that plaintiff would be entitled to judgment upon the pleadings. However, the court is of the opinion that plaintiff cannot have a judgment in the form of action which she has begun.

In Pennsylvania, the exclusive remedy for the recovery of the value of shares upon alleged maturity lies in equity, and this court would have no jurisdiction to enter any judgment in the present *assumpsit* action. In this regard, the right of members at maturity is not to be confused with the right of withdrawal which may be enforced by action at law.

In Thornton and Blackledge's Building and Loan Associations, § 330, page 352, it is said: "Suit to recover the amount due on matured or prepaid stock must be brought in equity and not at law."

Again, in Laurel Run Building Ass'n *v.* Sperring, 106 Pa. 334, 338, Mr. Justice Paxson said: "As a result of this somewhat questionable proceeding he held two shares of stock of the fixed value of $116 each, $232, upon which he owed the company $141.40, leaving an apparent balance due him of $90.60, which he would be entitled to receive upon the final winding up of the first series. That he was not entitled to sue for it at law was settled in O'Rourke *v.* West Penn Loan and Building Ass'n, 93 Pa. 308."

Turning to O'Rourke *v.* West Penn Loan and Building Ass'n, 93 Pa. 308, we have an action in *assumpsit* brought for the recovery of the matured value of the plaintiff's shares in the defendant association. The court, upon motion, granted a non-suit and subsequently refused to take it off. Yerkes, J., in an opinion, which was affirmed *per curiam* by the Supreme Court, said:

"The plaintiff brought his action at law. Upon the trial he showed that he was the owner of the stock in the building association; that by the report of auditors, distributed at an annual meeting in November, 1878, each share of stock in the series to which he belonged was worth $200, and that thereafter the officer whose duty it was to receive monthly dues refused to receive them, on the ground that the stock was fully paid up. He was non-suited, upon the ground that the rights which he sought to enforce being those of a stockholder only, he had no remedy at law. The general principle that a stockholder *qua* stockholder must resort to a court of equity is conceded by the plaintiff's counsel, but he contends that a stockholder in a building association, as soon as his stock is announced to be fully paid, becomes a creditor and ceases to be a stockholder, or that the announcement that the stock is fully paid is equivalent to a declaration of a dividend of the par value of the shares. His proposition, as found in the paper-book, is: 'The stock in question increased in value and continued to be merely stock until the series ran out, after which time it stood in the position of a declared dividend.' It is true that it is the design and practice of associations to wind up as soon as can conveniently be done after the stock becomes of the value of $200 a share. Stock and loans are canceled and cash is paid to the non-borrowers. There is

nothing in this to change the status of stockholders. The corporation certainly exists until the final act of dissolution, and to exist there must be stock and stockholders. The argument of the plaintiff would leave no corporation to be sued and no authority to divide the funds, and the assets would be in the hands of mere individuals. It is no answer to this to say that these associations generally issue several series of stock and that because of outstanding series the corporation would exist to wind up a series that was fully paid, although stock of that series . . . and these corporations are of limited duration; the time must come with all of them when there will be but one series of stock outstanding. Nor can it be said that the stock of a fully-paid series retains enough of the elements of stock, and its holders sufficiently those of stockholders, to keep alive the corporation, for the purposes of suit, whilst at the same time the stock becomes a debt and the stockholder a creditor, sufficiently to bring the suit. It is not possible for either the stockholder or the stock to have the dual character ascribed. . . . Much remained for the corporation to do before the series could be wound up. If any of the money was loaned otherwise than upon the stock of the series, there would be another obstacle to the winding up. An immediate conversion of assets would probably result in loss, a result which the association should avoid. The stockholders have the right to share equally in the assets, which would hardly be possible if the association was liable to suit and execution by every shareholder of a fully paid-up series. The assets would be so eaten up by costs of litigation and the forced sales of property that little would be left for those who came last. We cannot see that building associations are exceptions to the general law governing corporations—that a shareholder cannot sue at law qua shareholder. It follows that, if he wishes to participate in all of the profits of the association, he must wait until the corporation winds up the series to which he belongs. If he is not content to await their action, his only remedy is to withdraw and to bring a suit at law as a withdrawing stockholder. Of course, there may be cases where he may invoke the aid of a court of equity. . . . Rule to take off non-suit discharged."

In his excellent treatise on "The Law of Building Associations," Mr. Endlich, § 118, page 107, states the rule:

"Membership in a building association gives ground to no exception to the general rule relating to corporations that a shareholder, qua shareholder, cannot maintain an ordinary action at law for the value of his paid-up stock. If he desires to participate in all the profits of the concern, he must wait until the society, or the series to which he belongs, is wound up; an operation which, on account of sales of real estate and other arrangements necessary to be made in order to realize the money required to pay the advanced shares in cash, may call for some indulgence in the matter of time. The only method of obtaining the money's worth of his shares from the association is that already pointed out, viz., withdrawal under the statute or by-laws, and suit at law for the amount legally coming to him. The value of any member's stock, as has before been shown, is not a present subsisting claim against the building association in the member. Its value, if he continues in the society, depends upon his going through the whole course of the scheme and can be ascertained only upon and after complete winding up. As a member, therefore, he cannot sue for it at law at any time. He can become a claimant for a definite amount only by withdrawal, i. e., by surrender of his membership, substituting in its place the character of creditor, at least in a qualified sense, and the principle which forbids such a suit applies equally to purely terminating and to serial associations, the claim in the latter being for the value of

stock in a series which has been declared matured. The argument that, when this event occurs, the stockholder ceases to be a member and becomes a mere creditor proves too much. If it were true, there would be no corporation left to be sued and no authority to divide the funds. And if it be said that, upon the maturity of but one series, the corporation continues to exist for the running of the others, the answer is that, even in a serial association, the time will come when there is but one series of stock outstanding, when its position must be the same as that of a purely terminating society. Certainly, the members of one series cannot have any other or greater rights than those of all the others or the last."

And, finally, in Eaton v. Eastern Building and Loan Ass'n et al., 7 Dist. R. 440, 442, Bittinger, P. J., said: "In the case of stockholders against a corporation involving intricate accounts, questions of acts *ultra vires* by the officers, calculations of losses in real estate, deduction from withdrawal value of shares of stock, payment of dues, insolvency and marshaling of assets, we consider this proceeding in equity, not only the appropriate remedy, but necessary for the equitable adjustment of the rights of parties. An action of law in such a case, with a trial before a jury, however intelligent, would afford a bungling and inadequate remedy and be entirely out of place." See, also, opinion of this court in Katz v. David Fine Building and Loan Ass'n, 13 D. & C. 217.

The court is of the opinion that the plaintiff has mistaken her remedy: Parry v. First National Bank of Lansford, 270 Pa. 556.

The rule for judgment is discharged.